**UNITED STATES, Appellee,**

v.

**David A. KERN, Corporal, U.S. Marine Corps, Appellant.**

No. 51196.
NMCM No. 84 3212.

U.S. Court of Military Appeals.

April 14, 1986.

For Appellant: *Lieutenant Colonel Richard E. Ouellette, USMC* (argued); *Commander David C. Larson, JAGC, USN, Lieutenant J.Cunyon Gordon, JAGC, USN, Lieutenant Thomas H. Dinkelacker, JAGC, USNR* (on brief); *Lieutenant Brian M. Madden, JAGC, USNR.*

For Appellee: *Lieutenant Colonel Stephen S. Mitchell, USMCR* (argued); *Captain W.J. Hughes, JAGC, USN and Major J.S. Uberman, USMC* (on brief); *Lieutenant Douglas R. Folkert, JAGC, USNR.*

*Opinion of the Court*

COX, Judge.

Appellant was tried by a general court-martial military judge sitting alone at the Marine Corps Air Ground Combat Center, Twentynine Palms, California, on April 30, 1984. Contrary to his pleas, he was found guilty of larceny of U.S. Government property, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $200.00 pay per month for 2 months, and reduction to E-1. The convening authority approved the sentence as adjudged and the Court of Military Review affirmed.

This Court granted appellant's petition and specified the following issues for review:

## I

WHETHER THE APPELLANT MUST SHOW THAT EVIDENCE WHICH THE GOVERNMENT HAS LOST OR DESTROYED WAS OF AN APPARENT EXCULPATORY NATURE AT THE TIME IT WAS LOST OR DESTROYED BEFORE THE GOVERNMENT IS BARRED FROM PROSECUTING THE APPELLANT.

## II

WHETHER THE DEFENSE MUST ALSO SHOW THAT THE LOST OR DESTROYED EVIDENCE WAS OF SUCH A NATURE THAT COMPARABLE EVIDENCE IS UNAVAILABLE.

We answer both questions in the affirmative and affirm.

Appellant was charged with stealing numerous items of government property which had a total value of $2,647.72. During the investigation of the offense, he admitted to Naval Investigative Service (NIS) agents that he had taken some items from "3d Tanks" or had picked them up around his work area.[1] He then took the agents to an off-base storage locker where the items were stored and gave them permission to search it. During the search, the agents seized what they thought was Government property. At times, appellant was asked whether or not a particular piece of property belonged to the Government and if he said it did not, that item was not seized. After the NIS agents had photographed and inventoried the property, it was given to the battalion supply officer, who, with the consent of trial counsel, returned it to the unit supply system.

At trial, the defense moved for dismissal because the Government could not produce the property alleged to have been stolen. The military judge held that the Government's inability to produce the property did not affect appellant's ability to present a defense to the theft but it did affect his ability to defend regarding the value of the property. Consequently, the judge reduced the value of the property from $2,647.72 to some value. He also refused to find bad faith on the part of the Government.[2]

For the purposes of this appeal, evidence generally can be placed into two categories. The first category is that of inculpatory evidence—that is evidence which tends to prove the existence of a fact favorable to the Government's case. The second category is evidence which is exculpatory (or "apparently" exculpatory)—that is evidence which tends to prove the existence of a fact favorable to the accused. This case concerns the destruction of evidence which the accused contends was exculpatory but

---

1. Appellant had been properly advised of his rights in accordance with Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831; *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

2. Although the Naval Investigative Service agents secured the chief trial counsel's permission before releasing the evidence, the military judge's refusal to find bad faith on the part of the Government is reasonably supportable because the evidence apparently was more inculpatory than it was exculpatory. This fact alone indicates that the Government had no motive to harm appellant when it released the property for return to normal supply channels.

which the Government believed to be inculpatory.

We start from the fundamental premise that due process prohibits the Government from deliberately suppressing material evidence which is favorable to an accused. *United States v. Bagley,* — U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Article 46, UCMJ, 10 U.S.C. § 846, seems to go beyond this constitutional minimum in directing that "[t]he trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." *See United States v. Killebrew,* 9 M.J. 154 (C.M.A.1980). Because this language makes no distinction as to types of evidence, an accused is entitled to have access to both exculpatory and inculpatory evidence. The problem arises in articulating a rule which applies to the loss or destruction of evidence which is not "apparently" exculpatory to the Government and, although "apparently" inculpatory, is not going to be used by the Government in its case.

In *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the respondents were stopped by police officers who suspected that they were driving while intoxicated. Each respondent submitted to an Intoxilyzer (breath-analysis) test and registered high enough on it to raise the presumption that he was intoxicated under California law. Although it was technically feasible to do so, the California law-enforcement officers followed their usual practice and did not preserve the breath samples. In concluding that the due-process clause of the fourteenth amendment to the Constitution did not require the preservation of the breath samples in order for the results of breath-analysis tests to be admissible at trial, the

Supreme Court pointed out that the police had not destroyed the breath samples in a deliberate effort to circumvent the requirements of *Brady v. Maryland, supra.* The Court then provided this two-part test for evaluating materiality of destroyed or lost evidence:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, [citation omitted] evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id.* 104 S.Ct. at 2534 (footnote omitted).

Appellant contends that Article 46, which gives the defense an "equal opportunity to obtain ... evidence," requires a more stringent rule governing preservation of evidence than does *California v. Trombetta, supra.*[3] *See United States v. Toledo,* 15 M.J. 255 (C.M.A.1983). While "[m]ilitary law has long been more liberal than its civilian counterpart in disclosing the Government's case to the accused and in granting discovery rights," *United States v. Killebrew, supra* at 159, it does not place stricter requirements on the Government to preserve evidence which is not "apparently" exculpatory than is required of the states under the fourteenth amendment to the Constitution. The rule announced in *Trombetta* satisfies both constitutional and military standards of due process and should therefore be applicable to courts-martial.

The Government has a duty to use good faith and due diligence to preserve and protect evidence and make it available to an accused. However, where the evidence is not "apparently" exculpatory, the burden is upon an accused to show that the

---

**3.** Appellate defense counsel has cited no case and our research has disclosed no federal case which has imposed a stricter standard under the fifth amendment to the Constitution.

evidence possessed an exculpatory value that was or should have been apparent to the Government before it was lost or destroyed and that he is unable to obtain comparable evidence by other reasonably available means. To require the Government to prove that the lost evidence was not exculpatory would be an insurmountable burden as the peculiar value of the otherwise apparently inculpatory evidence would be solely within the knowledge of the accused. It is the fact that the *value* of the evidence is not apparent which gives rise to the problem.

■ Unlike the remedial action required where evidence is withheld from the defense, *Brady v. Maryland, supra* 373 U.S. at 85, 87, 83 S.Ct. at 1195, 1196, the Supreme Court has fashioned no remedy where apparently exculpatory evidence is lost or destroyed and no comparable evidence is available to the accused. *California v. Trombetta, supra.* In the event evidence of apparently exculpatory value is lost or destroyed and the accused has been unable to obtain comparable evidence, then the trial judge may fashion such remedies as are appropriate to protect the fundamental rights of the accused. *United States v. Loud Hawk,* 628 F.2d 1139, 1151 (9th Cir. 1979) (Kennedy, J., concurring), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980); *see also United States v. Grammatikos,* 633 F.2d 1013 (2d Cir. 1980). Determination of an appropriate remedy is left to the sound discretion of the trial judge.[4] Some suggested remedial actions include exclusion of inculpatory evidence; requiring the Government to stipulate as to the facts and circumstances surrounding the loss or destruction of the exculpatory evidence; requiring the Government to stipulate as to the fact or condition of the evidence; or even dismissal

of charges or specifications where bad faith is clearly demonstrated, and the rights of the accused cannot adequately be protected otherwise.

■ The military judge properly applied the law here. First, he found no bad faith. Second, it is unlikely that the evidence would have been exculpatory in any event. Appellant was charged with stealing numerous items, many of which appeared to be uniquely military. He confessed to stealing government property, although admittedly he did not specifically identify each item. The evidence was apparently inculpatory rather than exculpatory. Third, we note that comparable evidence to show the nature of the stolen items was available in the form of photographs and inventories. Although there might have been some benefit in having the property in question at the trial in order to clearly establish its condition and value, the military judge did reduce the alleged value of the property, a remedy which certainly protected the rights of the accused; thus, appellant was not harmed by the Government's inability to produce that property.

While the Government's conduct in this case is not condoned, we recognize the difficulties in retaining, for long periods of time, property that should be returned to normal use. Substitute evidence, such as clear photographs, accurate descriptions, dates and times of purchases, and expert opinions as to condition and value, are often used to preserve for the triers of fact evidence that the victim needs in order to carry out normal use of the property. Careful prosecutors will notify the defense of the intention to return stolen property, thereby allowing the defense to conduct an independent examination of the property and placing on the defense the onus of

---

4. R.C.M. 703 states:

   (f) *Right to evidence.*

   \*  \*  \*  \*  \*  \*

   (2) *Unavailable evidence.* Notwithstanding subsection (f)(1) of this rule, a party is not entitled to the production of evidence which is destroyed, lost, or otherwise not subject to compulsory process. However, if such evidence is of such central importance to an

issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings, unless the unavailability of the evidence is the fault of or could have been prevented by the requesting party.

requesting that property be retained for use as evidence at trial. This should bring to light any non-apparent exculpatory value of evidence to the defense case and forestall the creation of an appellate issue. In other words, this case does not do away with the rule of reason applicable to police agencies or to prosecutors in dealing with evidence. Moreover, it does require a diligent effort by prosecutors to preserve and protect exculpatory evidence and make it available to the accused for use in his defense.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.