UNITED STATES

v.

**Staff Sergeant Charles E. MANUEL III, FR493–66–0798 United States Air Force.**

**ACM 30025.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 28 April 1992.

Decided 23 May 1994.

Appellate Counsel for Appellant: Colonel Terry J. Woodhouse, Major Mary C. Yastishock, Major George F. May, and Major Marc A. Fox.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, and Major Jules D. Silberberg.

Before DIXON, GRUNICK, and PEARSON, Appellate Military Judges.

OPINION OF THE COURT

GRUNICK, Judge:

The Government failed to retain appellant's reported cocaine positive urine sample. Under the circumstances of this case, the Government's failure to exercise due diligence, comply with regulatory guidance and preserve a reported positive urine sample denied appellant equal access to all evidence as required by Article 46, UCMJ, 10 U.S.C. § 846. We set aside appellant's conviction for the use of cocaine.

FACTS

Appellant was selected to provide a urine sample as part of a random urinalysis conducted at Sheppard Air Force Base on 4 October 1991. The sample was sent to the Air Force Drug Testing Laboratory (AFDTL) at Brooks Air Force Base and it tested positive for benzoylecgonine (BE), a metabolite of cocaine. The lab notified appellant's unit of his positive cocaine test results during November 1991. Appellant's defense counsel asked for a government retest of the urine sample in early March 1992, this time requesting tests be administered to again evaluate for BE, the cocaine metabolite; and for the first time, ecgoninemethylester, to determine if there had been adulteration of the sample with raw cocaine; and a blood secretor test, to determine if the sample matched appellant's blood type.

The convening authority on 12 March 1992 denied appellant's request for retesting of the urine sample. On 31 March 1992, defense counsel requested the sample be sent to a private laboratory for analysis by an expert at appellant's expense. The Government responded on 1 April 1992, that they could not comply with this request because appellant's sample had been destroyed. An investigation conducted at AFDTL attempted to determine how and when appellant's positive urinalysis sample was destroyed. Although the destruction of the sample was not discovered until March 1992, it apparent-

ly was discarded in December 1991, just over one month after it had tested positive. The investigation revealed appellant's sample was used in a "special study" to evaluate an alternative drug screening method. Following the study, the sample was apparently placed in a tray with negative samples and destroyed.

Defense counsel moved to suppress the discarded sample and lab results because appellant was denied an equal opportunity to obtain and test the evidence. The military judge denied the defense counsel's motion to suppress the results of the urinalysis, relying upon *United States v. Kern*, 22 M.J. 49 (C.M.A.1986), and *United States v. Frost*, 19 M.J. 509 (A.F.C.M.R.1984), *aff'd*, 22 M.J. 386 (C.M.A.1986). The military judge concluded that appellant had not established any exculpatory value in the discarded urinalysis sample and there was no bad faith established on the part of the laboratory employee who destroyed the sample.

## I. DUE PROCESS ISSUES FROM URINALYSIS

### A. FAILURE TO PRESERVE EVIDENCE

Both cases relied upon by the military judge in ruling on appellant's motion to suppress at trial cited the Supreme Court decision in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). The Supreme Court in that case provided a two-part test for evaluating materiality of destroyed or lost evidence:

Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, [citation omitted] evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id.* 467 U.S. at 488–89, 104 S.Ct. at 2534 (footnote omitted).

In *Trombetta* police officers stopped respondents under suspicion that they were driving while intoxicated. The respondents submitted to a breath test that indicated they registered high enough to be presumptively intoxicated under California law. The California officers followed their usual practice and did not preserve the breath samples. The Supreme Court did not require the preservation of the breath samples for the results of the breath-analysis to be admissible.

In *United States v. Kern*, the accused consented to the search of his off-base storage locker where items of Government property were seized. Kern confessed to stealing the items as they were seized, photographed and inventoried. The pieces of stolen property were returned to the unit and were unavailable at trial. Judge Cox, writing for the Court of Military Appeals, found the military judge properly applied the law because there was no bad faith, it was unlikely the evidence was exculpatory, and there were photographs and inventories comprising comparable evidence to show the nature of the stolen items.

In *Kern*, 22 M.J. at 51, Judge Cox found:

The Government has a duty to use good faith and due diligence to preserve and protect evidence and make it available to an accused. However, where the evidence is not "apparently" exculpatory, the burden is upon an accused to show that the evidence possessed an exculpatory value that was or should have been apparent to the Government before it was lost or destroyed and that he is unable to obtain comparable evidence by other reasonably available means. . . . It is the fact that the *value* of the evidence is not apparent which gives rise to the problem.

This court in *United States v. Frost*, refused to suppress a urine test when the defense was not able to perform an independent test of the urine sample. The laboratory personnel withdrew a small quantity of Frost's total sample for a retest and the parent sample was inadvertently destroyed. A part of the remaining sample was sent to the laboratory selected by the accused but it was of insufficient quantity for the desired tests. In *Frost*, neither the trial court, this court, nor the Court of Military Appeals ad-

dressed the issue of the laboratory's failure to follow applicable regulations on the retention of Frost's urine sample. They followed only the additional step applied by the Supreme Court to the *Trombetta* analysis:

> We ... hold that unless a criminal defendant can show bad faith on the part of police, failure to preserve useful evidence does not constitute a denial of due process of law.

*Arizona v. Youngblood,* 488 U.S. 51, at 57, 109 S.Ct. 333, at 337, 102 L.Ed.2d 281 (1988). An absence of bad faith has been found in applying Article 46 "equal access" to discarded evidence, *United States v. Garries,* 22 M.J. 288, 292–93 (C.M.A.1986), *cert. denied,* 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986) (stains consumed during test); *United States v. Anderson,* 36 M.J. 963 (A.F.C.M.R. 1993) (landlord replaced blood-stained carpet); *United States v. Gill,* 37 M.J. 501 (A.F.C.M.R.1993) (autopsy fluid samples were consumed or discarded in accordance with routine laboratory practice); *United States v. Mobley,* 28 M.J. 1024, 1028 (A.F.C.M.R.1989), *aff'd* 31 M.J. 273 (C.M.A. 1990) (release of automobile to victim's husband). The military judge in appellant's case determined there was no showing of bad faith upon the part of lab personnel in the destruction of his urine sample. As was done in *Frost,* the trial court failed to discuss whether the urine collection regulations conferred a right on appellant.

## B. FAILURE TO FOLLOW REGULATIONS

■ The primary reason directives and regulations provide for the retention of positive urine samples is to preserve them for retesting. To require an appellant to prove that a lost urinalysis sample was "apparently exculpatory" or that it was destroyed in bad faith would be an insurmountable and unnecessary burden. The "apparent value" of a positive urinalysis sample is well recognized by the Government. Extensive directives and regulations providing for the retention and safeguarding of urinalysis sample enhance the credibility of the drug testing program. The ability of an accused to prepare a defense in a urinalysis case is uniquely differ-

ent than in any other criminal case. Judge Cox commenting on this stated:

> I recognize that we may well be the only jurisdiction which permits the criminal conviction of a citizen for drug abuse based solely on a laboratory test of that citizen's urine. [citation omitted] Therefore, we must be ever vigilant to the truth of the evidence.

*United States v. Mack,* 33 M.J. 251, 256 (C.M.A.1991). What is apparently inculpatory evidence may become clearly exculpatory evidence for an accused only if preserved and retested. Due diligence in the preservation of positive urinalysis samples is required.

The Supreme Court and the Court of Military Appeals have recognized that the Government is bound by its own regulations, especially when the regulations confer a right or benefit an individual. *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. Arguello,* 29 M.J. 198 (C.M.A.1989); *United States v. McGraner,* 13 M.J. 408 (C.M.A.1982). Multiple directives emphasize the importance of safeguarding positive urinalysis samples. The exculpatory *value* of this evidence and the inability to obtain comparable evidence is readily apparent from a review of Government regulations detailing its proper handling.

Department of Defense Directive 1010.1 (December 28, 1984) concerns the Drug Abuse Testing Program, and ¶ I.2, requires retention of positive samples for 60 days, extending this to 120 days when a court-martial is involved. Air Force Regulation 160–23, Drug Abuse Testing Program, 31 July 1986, ¶ 8d(4)(a), requires retention for 180 days. An AFDTL operating instruction being used at the time appellant's sample was tested, required retention of all reported positive samples for one year.

The military judge, in ruling on the admissibility of appellant's urine tests results, found no bad faith on the part of AFDTL personnel who discarded appellant's urine sample. The military judge also found the sample was destroyed contrary to the AFDTL operating instruction without commenting on the applicability of the other drug testing regulations. The military judge

did not rule on whether any of the regulations or directives concerning retention of positive urinalysis samples were intended to confer any substantial legal rights for the individuals tested.

In *United States v. Pollard,* 27 M.J. 376 (C.M.A.1989), the Court of Military Appeals looked at the technical procedures used to collect urine samples. The Court held that deviating from a regulation or instruction which sets out procedures for collecting, transmitting, or testing urine samples does not render a sample inadmissible as a matter of law. Judge Cox also stated, "the military judge may exclude drug-test results if he finds there has been a substantial violation of regulations intended to assure reliability of the testing procedures." *Pollard,* 27 M.J. at 377.

 Here the Government established a directive and regulatory standard for retaining and preserving positive urine samples. We hold this standard was intended to confer a substantial right for the individual tested. Having established the standard, a lack of due diligence in the care of this important evidence resulted in its destruction.

Our decision is narrowly limited to violations of established directives and regulations for the retention of positive urine samples and does not address technical violations in the procedures for collection, transmission, or testing of urine samples. We find this was a substantial violation of a directive and regulation intended to confer a substantial right upon those tested and to assure reliability in the urine testing procedures. Accordingly, the appropriate remedy in this situation requires the exclusion of the positive lab tests. Article 46, UCMJ; R.C.M. 703(f)(2).

## CONCLUSIONS

We have examined the remaining assignments of error and find them to be without merit.

We set aside the court's finding that appellant was guilty of the use of cocaine, specification 1 of the Charge. We find the remaining finding of guilt to the use of marijuana, substantiated by a second urinalysis sample that was properly retained, to be correct in law and fact.

Having set aside specification 1 of the Charge, we are unable to determine with any accuracy the impact of our decision upon appellant's sentence. *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990). Therefore, we set aside appellant's sentence. A rehearing on sentence is authorized. R.C.M. 1203(c)(2).

Chief Judge DIXON and Judge PEARSON concur.