**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

| | | |
|---|---|---|
| **UNITED STATES,** | ) | **Misc. Dkt. No. 2013-25** |
| **Appellant** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ORDER** |
| **Airman First Class (E-3)** | ) | |
| **DEX E. YARBER,** | ) | |
| **USAF,** | ) | |
| **Appellee** | ) | **Special Panel** |

WEBER, Judge:

The Government filed an interlocutory appeal under Article 62, UCMJ, 10 U.S.C. § 862, in this matter. The Government challenges the military judge's ruling to entirely suppress the testimony of an alleged victim in this case, Senior Airman (SrA) EH. Specifically, the Government contends the military judge erred in finding the Government violated Article 46, UCMJ, 10 U.S.C. § 846; Rule for Courts-Martial (R.C.M.) 703; and the Jencks Act, 18 U.S.C. § 3500, when SrA EH's cell phone containing text messages was lost. We agree with the Government that the military judge abused his discretion. Therefore, we grant the Government's appeal and return this case to trial.

*Background*

The appellee is charged, inter alia, with two specifications of abusive sexual contact in violation of Article 120 UCMJ, 10 U.S.C. § 920. Both specifications concern alleged conduct toward SrA EH.

The appellee and SrA EH were assigned to the same training squadron. They met the evening of the alleged offenses at an on-base dining facility, when the appellee and another male Airman invited SrA EH to sit at their table for dinner. During the meal, the appellee and SrA EH exchanged cell phone numbers and showed each other pictures of themselves on their respective cell phones. The pictures included SrA EH in a pet store, SrA EH posing wearing a hat, and the appellee posing without a shirt.

SrA EH alleges the appellee intentionally made physical contact with her leg and foot as she sat next to him. Despite expressing no consent to this physical contact, SrA EH alleges the appellee then twice slid his hand up her leg to the "crook of her groin," and she grabbed and removed his hand. SrA EH alleges the appellee then tried to

hold her hand, however, she pulled her hand free and told him "stop," or "don't," or words to that effect.

After the other Airman left the table, SrA EH alleges the appellee grabbed her hand and placed it on his erect penis. SrA EH states she responded by squeezing his penis hard to make the appellee uncomfortable and telling him to stop. Less than a minute later, according to SrA EH, the appellee again grabbed her hand and placed it on his erect penis. SrA EH alleges she squeezed and twisted the appellee's penis and told him, "Cut it out now. I mean it. You will not like what happens next if you don't."

Following the incident in the dining facility, SrA EH called her husband, who encouraged her to report it. SrA EH reported the incident to a student leader in her training squadron and then the Sexual Assault Response Coordinator. Security Forces patrolman Technical Sergeant (TSgt) BB contacted SrA EH to interview her. During the interview, SrA EH told TSgt BB the appellee sent her a text message indicating he knew what he did was wrong. With SrA EH's permission and assistance, TSgt BB viewed four text messages between the appellee and SrA EH. TSgt BB called her supervisor, Officer MD, to ask if she should seize the cell phone as evidence, but Officer MD advised her not to do so. TSgt BB again questioned Officer MD if she should seize the phone, asserting it was evidence, but Officer MD again advised her this was not necessary. Officer MD later testified his rationale was that he believed he and TSgt BB were not the lead investigators in the case, and he did not want to take any action that might be at odds with the lead investigator's actions.

TSgt BB then asked SrA EH if she could write down the text messages and SrA EH agreed. TSgt BB transcribed four text messages, three from the appellee and one from SrA EH. TSgt BB testified she copied the text messages "98 percent accurate," just changing one word to "she" to indicate SrA EH sent the text message instead of the appellee. TSgt BB's transcription of the text messages reads as follows:

1. I kno [sic] you don't want to talk to me right now but I shouldn't have done that & I promise I can learn from mistakes :1 [sic]

2. I'm extremely sorry for what I did & want to be your friend. I promise to keep my hands to myself. You're extremely cool & I want to get to know you as a friend at least please just give me a chance.

She states quality woman, lady & won't be treated like something cheap. You have shown lack quality [sic] with the way you treated me this evening. I will let you know when I have decided how to deal with your behavior.

3. OK I unstand [sic] & I respect what you have said I guess I just got the wrong idea I'm more sorry right now then [sic] I have been in a while.

According to TSgt BB, the messages numbered one through three represented text messages sent by the appellee to SrA EH, while the portion beginning with "She states quality woman" represented a message sent by SrA EH to the appellee. TSgt BB did not review the call log or take any actions to positively determine these were the only text messages between SrA EH and the appellee; rather, she relied on SrA EH's representation that there were no more text messages between the two.

Having been advised not to seize the phone, TSgt BB instead instructed SrA EH not to delete the messages in case investigators needed to see them again later. However, no other investigative agency followed up on this matter. About five months later, shortly before the Article 32, UCMJ, 10 U.S.C. § 832, hearing in this case, SrA EH's young daughter lost the phone when SrA EH gave it to her in a store to play with. The Government attempted to obtain copies of the text messages in question from SrA EH's cell phone service provider but was unable to do so.

At a pretrial session, the military judge suppressed all testimony from SrA EH after determining the Government violated Article 46, UCMJ; R.C.M. 703; and the Jencks Act when SrA EH's cell phone was lost. The Government timely appealed the military judge's ruling pursuant to Article 62, UCMJ.

*Jurisdiction and Standard of Review*

This Court has jurisdiction to hear this appeal under Article 62(a)(1)(B), UCMJ, which authorizes the Government to appeal "[a]n order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding," in a court-martial where a punitive discharge may be adjudged.

In contrast to our powers of review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), this Court "may act only with respect to matters of law" in an Article 62, UCMJ, appeal. Article 62(b), UCMJ; R.C.M. 908(c)(2). Thus, we are bound by the military judge's findings of fact unless they are clearly erroneous, and we have no authority to find additional facts. *United States v. Baker*, 70 M.J. 283, 287-88 (C.A.A.F. 2011). We "'give due deference' to the judge's findings of fact and accept them 'unless . . . unsupported by the evidence of record or . . . clearly erroneous.'" *United States v. Salazar*, 44 M.J. 464, 471 (C.A.A.F. 1996) (quoting *United States v. Burris*, 21 M.J. 140, 144 (C.M.A. 1985)). "When a court is limited to reviewing matters of law, the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are 'fairly supported by the record.'" *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004) (quoting *Burris*, 21 M.J. at 144).

We review a military judge's ruling on a motion to suppress evidence for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citing *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)). "'Abuse of discretion' is a term of art applied to appellate review of the discretionary judgments of a trial court. An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *Id.* (citing *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007)). "Further, the abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *Gore*, 60 M.J. at 187 (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)).

"In reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party." *United States v. Cowgill*, 68 M.J. 388, 390 (C.A.A.F. 2010) (quoting *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)) (internal quotation marks omitted).

*Discussion*

The military judge suppressed SrA EH's testimony based on his determination that the Government violated Article 46, UCMJ; R.C.M. 703; and the Jencks Act in failing to secure and produce SrA EH's cell phone. Recognizing we consider the evidence in the light most favorable to the appellee, we find the military judge abused his discretion in all three aspects of his ruling.

(1) Article 46 and R.C.M. 703

Article 46, UCMJ, provides, in pertinent part:

The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe.

Our superior court has held an accused must satisfy the test announced in *California v. Trombetta*, 467 U.S. 479 (1984), in order to establish a violation of Article 46, UCMJ, for lost or destroyed evidence. *See United States v. Kern*, 22 M.J. 49, 51 (C.M.A. 1986) (noting the *Trombetta* test satisfies both constitutional and military standards of due process and is applicable to trial by courts-martial). The test articulated in *Trombetta*, and further refined in *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), provides that the destruction of, or failure to preserve, potentially exculpatory evidence does not entitle an accused to relief on due process grounds unless: (1) the evidence possesses an exculpatory value that was apparent before it was destroyed; (2) it is of such a nature that the accused would be unable to obtain comparable evidence by other

reasonably available means; and (3) the Government acted in bad faith when it lost or destroyed such evidence. *United States v. Terry*, 66 M.J. 514, 517 (A.F. Ct. Crim. App. 2008). If "material exculpatory evidence" is lost as opposed to merely "potentially useful" evidence, the requirement to demonstrate the Government acted in bad faith does not apply. *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004).

To be entitled to relief under R.C.M. 703(f), an accused must show: (1) the evidence is relevant and necessary; (2) the evidence has been destroyed, lost, or otherwise not subject to compulsory process; (3) the evidence is of such central importance to an issue that it is essential to a fair trial; (4) there is no adequate substitute for such evidence; and (5) the accused is not at fault or could not have prevented the unavailability of the evidence. R.C.M. 703(f)(1)-(2).

The military judge orally ruled on the defense's motion concerning the lost cell phone. He did not issue findings of fact – oral or written – and he merely referred to the evidence generally in explaining his ruling. As he issued no explicit findings of fact, our task is more difficult in determining the basis for the military judge's ruling.[1]

Several aspects of the military judge's ruling concerning Article 46, UCMJ, and R.C.M. 703 appear questionable. For example, the military judge found the evidence of the text messages was exculpatory, but the sum of the messages is more accurately characterized as inculpatory. Even if the appellee's message that "I guess I just got the wrong idea" could have furthered a mistake of fact as to consent defense,[2] it is difficult to see how the entirety of the text messages – which contained several admissions by the appellee – could have been "favorable to an accused" and therefore exculpatory. *Kern*, 22 M.J. at 51 (citations omitted). The military judge also did not clearly explain how he concluded that any exculpatory value in the text messages was apparent before the evidence was lost. Finally, the military judge found bad faith on the part of the Government, "albeit maybe not intentionally." Assuming the evidence was "potentially exculpatory," which requires a bad faith showing, the military judge did not explain how the Government can unintentionally act in bad faith. This analysis would have been particularly appropriate in a case such as this, where the inculpatory nature of the text

---

[1] We agree with appellate defense counsel's concession that "there could have been a better job" with respect to developing the military judge's ruling. Military judges would be well advised to issue clearly labeled findings of fact and conclusions of law, particularly when issuing a case-dispositive ruling likely to be the subject of an appeal.

[2] The Government did not charge that the "bodily harm" the appellee caused Senior Airman (SrA) EH was non-consensual sexual contact. In this situation, involving the latest version of Article 120, UCMJ, 10 U.S.C. § 920, some authorities have questioned whether mistake of fact as to consent to bodily harm is an applicable defense. *See* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 3-45-16, note 9 (Version 13.2 13 November 2013) (noting that for a sexual assault charge, " [w]hether mistake of fact as to consent to the sexual act is a defense is an issue the military judge must decide . . . .") (emphasis in original); Jim Clark, *Professor Jim Clark on Analysis of Crimes and Defenses 2012 UCMJ Article 120, Effective 28 June 2012*, 2012 Emerging Issues 6423 (2012), http://www.lexisnexis.com/documents/pdf/20120705060050_large.pdf (opining that mistake of fact to consent is not a defense to a charge of sexual assault by causing bodily harm if the Government does not allege the bodily harm was a "non-consensual sexual act").

messages meant the Government had no incentive to lose them. *See Trombetta*, 467 U.S. at 488 (finding no due process violation where "[t]he record contains no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence"); *Youngblood*, 488 U.S. at 58 (citing, as an example of bad faith, "those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant"). Finally, we question the military judge's summary conclusion on the R.C.M. 703 aspect of his ruling that the evidence is of such central importance to an issue that it is essential to a fair trial. The appellee was perfectly free to raise a mistake of fact as to consent defense with or without the text messages, particularly where the defense was provided with the substance of the appellee's text messages, including his statement, "I guess I just got the wrong idea."

However, we need not explicitly rule on these aspects of the military judge's ruling because we find TSgt BB's transcription of the text messages provided comparable evidence to the lost cell phone that served as an adequate substitute. TSgt BB testified her transcription of the text messages was "98 percent accurate," with only one alteration that did not change the substance of the messages. A substantially verbatim transcript of text messages is the very definition of "comparable evidence." *See Kern*, 22 M.J. at 52 (photographs and inventories of stolen military equipment served as comparable evidence for the stolen items themselves); *United States v. Guthrie*, 25 M.J. 808, 811 (A.C.M.R. 1988) (typed, verbatim copy of a prior handwritten statement was comparable evidence when the original statement was destroyed). The military judge's analysis completely ignores the fact TSgt BB copied down the text messages essentially verbatim.

The military judge's ruling hinted TSgt BB may not have transcribed all the text messages, but the military judge did not explicitly find any facts concerning this issue. To the extent the military judge's discussion can be considered a finding of fact that TSgt BB did not capture all the text messages, we hold such a finding is not fairly supported by the record. TSgt BB did testify that she relied on SrA EH's representation that the four text messages TSgt BB transcribed represented the totality of the messages. However, there is no evidence in the record to indicate SrA EH hid text messages from TSgt BB, and SrA EH averred in her statement to law enforcement and in her Article 32, UCMJ, testimony that no other text messages existed. TSgt BB was also looking at the phone when she transcribed the text messages, meaning it would be difficult for SrA EH to hide messages from TSgt BB even if she wanted to. The brief passage of time in between the charged acts and TSgt BB's viewing of the text messages also undercuts the military judge's finding, as do the words of the text messages themselves, which indicate a start and finish to the conversation. Comparable evidence of the lost text messages existed, and the transcript of the messages served as an adequate substitute for the lost evidence. Therefore, no Article 46, UCMJ, or R.C.M. 703 violation occurred.[3]

---

[3] The military judge also referenced photos that existed on SrA EH's cell phone in his ruling as a possible additional basis for finding that the missing cell phone contained exculpatory evidence. However, the military judge never articulated any rationale to explain how these photos were exculpatory. We fail to see what exculpatory value the

## (2) The Jencks Act

R.C.M. 914 is the military counterpart to the Jencks Act. R.C.M. 914(a) provides:

After a witness other than the accused has testified on direct examination, the military judge, on motion of a party who did not call the witness, shall order the party who called the witness to produce, for examination and use by the moving party, any statement of the witness that relates to the subject matter concerning which the witness has testified.

R.C.M. 914(f) defines a "statement" as:

(1) A written statement made by the witness that is signed or otherwise adopted or approved by the witness;
(2) A substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and contained in a stenolineart, mechanical, electrical, or other recording or a transcription thereof; or
(3) A statement, however taken or recorded, or a transcription thereof, made by the witness to a Federal grand jury.[4]

R.C.M. 914 and the Jencks Act only apply to "statements" within the definition above. In addition, for the Jencks Act and R.C.M. to apply, statements by Government witnesses must be "in the possession of the United States." 18 U.S.C. § 3500(a); R.C.M. 914 (a)(1).

Again, the military judge issued no findings of fact in concluding the Government violated the Jencks Act, and his analysis is brief and conclusory. We find the military judge abused his discretion in at least three respects. First, the statements were never "in the possession of the United States," a fact the military judge failed to analyze. *Id.* TSgt BB never took physical control of the cell phone. The appellee argues the cell phone came into the possession of the United States when TSgt BB directed SrA EH to not delete any text messages, thereby making her a "de facto government agent." Under a common understanding of the word "possession," we do not agree that directing a witness to retain evidence brings the evidence within the Government's "possession," at least under these facts.[5] Second, the military judge failed to analyze how the text

---

images on SrA EH's cell phone had, as there was no evidence SrA EH's photos were flirtatious or could have conveyed consent to the charged actions.

[4] The Jencks Act contains a substantially similar definition of "statement," with minor variances not relevant to this appeal. 18 U.S.C. § 3500(e)(1)-(3).

[5] Federal Circuit Courts have generally required a statement to be in the possession of a federal prosecutorial agency to fall within the Jencks Act. *See, e.g., United States v. Naranjo*, 634 F.3d 1198, 1211-12 (11th Cir. 2011) (holding that a statement is in the possession of the United States for Jencks Act purposes "if it is in the possession of a

messages met the definition of a "statement." We do not see how the text messages constitute "statements" for this purpose, as SrA EH did not sign or otherwise adopt or approve them by incorporating them into an official statement to the Government, and the other components of the definition do not apply.[6] Finally, even if the Jencks Act applied, the Government did produce the statements in the form of TSgt BB's notes. The defense is entitled to the "statement" made by the witness, not to the precise format on which the statements were made or the actual physical device used to transmit the messages. *See United States v. Pena*, 22 M.J. 281, 283 (C.M.A. 1986) (holding the accused was not entitled under the Jencks Act to statements recorded on audiotape when the tapes were transcribed and there was "no indication whatsoever of substantive differences between the taped versions . . . and the typewritten reports signed by the agents"); *United States v. Myers*, 13 M.J. 951, 952 (A.F.C.M.R. 1982) (holding that under the Jencks Act, the accused was not entitled to both the witness's typed statement and the handwritten statement from which the typed statement was accomplished). The Jencks Act simply does not apply to these text messages, and even if it does, the Government complied with the Act.[7]

We find the military judge abused his discretion in finding the Government violated Article 46, UCMJ; R.C.M. 703; and the Jencks Act. As no violation occurred, there are no grounds to suppress SrA EH's testimony.

*Conclusion*

On consideration of the appeal by the United States under Article 62, UCMJ, it is by the Court on this 20th day of February 2014,

---

federal prosecutorial agency") (quoting *United States v. Cagnina*, 697 F.2d 915, 922 (11th Cir. 1983)) (internal quotation marks omitted). Where the statements are physically held by someone other than a federal prosecutorial agency, such statements are generally not considered in the possession of the United States unless the holder serves as "an arm of the United States government." *United States v. Reyeros*, 537 F.3d 270, 285 (3rd Cir. 2008) (holding that Columbian courts holding extradition documents did not serve as an arm of the United States government and therefore Jencks Act did not apply to such documents).

[6] *See Palermo v. United States*, 360 U.S. 343, 345 (1959) (noting that the purpose of the Jencks Act was to allow the defense "under certain circumstances, to obtain, for impeachment purposes, statements which had been made to government agents by government witnesses"); *United States v. Douglas*, 32 M.J. 694, 698 (A.F.C.M.R. 1991) (holding that written notes by a government informant were covered by the Jencks Act because the notes were prepared at the request of a law enforcement agent and adopted in the informant's testimony).

[7] We note as well that the Jencks Act only covers statements by a witness other than the accused. Therefore, even if the Jencks Act applied to the text messages, it would only apply to the one text message sent by SrA EH, not the text messages sent by the appellee.

Misc. Dkt. No. 2013-25

**ORDERED:**

The appeal of the United States under Article 62, UCMJ, is hereby **GRANTED**. The ruling of the military judge suppressing the testimony of SrA EH in its entirety is vacated and the record is remanded for further proceedings consistent with this opinion.

ROAN, Chief Judge, and HELGET, Senior Judge, concurring.

FOR THE COURT

LAQUITTA J. SMITH
Appellate Paralegal Specialist