CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MORRIS, JUETTEN, and MURDOUGH
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist MAX G. PREDVIL**
**United States Army, Appellant**

ARMY 20230342

Headquarters, 25th Infantry Division and U.S. Army Hawaii*
Michael E. Korte and Jacqueline K. Emmanuel, Military Judges
Colonel Christopher E. Martin, Staff Judge Advocate

For Appellant: Captain Stephen R. Millwood, JA; Stephen H. Carpenter, Jr., Esquire (on brief).

For Appellee: Colonel Richard E. Gorini, JA; Lieutenant Colonel K. M. Bohlke, JA; Major Justin L. Talley, JA; Captain Stewart A. Miller, JA (on brief).

8 September 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MURDOUGH, Judge:

Appellant raises five assignments of error, four of which warrant discussion but no relief.[1] Appellant asserts (1) the pretrial military judge abused his discretion for denying a defense motion to dismiss or for other appropriate relief due to the loss of purportedly exculpatory evidence, (2) the pretrial military judge abused his discretion for denying a defense motion to abate the proceedings for the loss of the same evidence, (3) the military judge at trial abused her discretion by denying a defense request for an adverse inference instruction due to the loss of the same evidence, and (4) trial defense counsel were ineffective for failing to raise a mistake of fact defense.

---

*Corrected

[1] We have considered the appellant's fifth assignment of error, denial of speedy post-trial processing, and determine it warrants neither discussion nor relief.

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual assault without the consent of the named victim in violation of Article 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920.[2] The military judge sentenced appellant to a dishonorable discharge, 12 months of confinement, and reduction to the grade of E-1.

## BACKGROUND

After a night out, appellant and the victim, ▆▆▆▆ returned to ▆▆▆▆ 's home. The two continued drinking, and ▆▆▆▆ allowed appellant to spend the night at her home. ▆▆▆▆ lay on the floor of the living room. Early in the morning, she awoke to appellant digitally penetrating her vulva. She then went to her bedroom, locked the door, and slept until later that morning.

▆▆▆▆ had a motion-activated camera in her living room that used a software application named "Wyze" to create and store both still photographs and video recordings. When ▆▆▆▆ awoke the morning of the sexual assault, she had a notification on her phone from the Wyze app that notified her that the camera in her living room had detected motion and had been activated. She used her phone to review the video recording from earlier that morning. The recording showed the appellant penetrating her, which in her words "confirmed" her belief of what had happened. She then showed a segment of the video to her roommate, Mr. ▆▆.

Later, ▆▆▆▆ sent appellant a text message, "Okay what did you do last night," which precipitated a text conversation in which appellant admitted, "I apologize for anything I did without your consent" and "I just fingered you I stopped at that tho [sic] I apologize I was drunk and was definitely wrong for violating that boundary." A few weeks later, appellant was interviewed by an agent of the Army Criminal Investigation Division (CID), during which he admitted he digitally penetrated ▆▆▆▆ 's vulva. In conjunction with that interview, he wrote a handwritten apology to ▆▆▆▆ The text messages, his recorded interview, and his handwritten apology were all admitted into evidence at trial.

The government also offered still photographs taken from the Wyze camera. The Defense objected on best evidence grounds, *see generally* M.R.E. 1004, and for lack of foundation. The military judge overruled the former, allowed the trial counsel to ask additional questions on the latter, and eventually admitted the photographs into evidence. The judge further permitted the victim to testify about

---

[2] The panel acquitted appellant of a parallel specification that alleged he committed the same sexual assault while the victim was asleep, unconscious, or otherwise unaware. As the panel was presented with both distinct theories of liability and conclusively elected one but not the other, we perceive no conflict under *United States v. Mendoza*, 85 M.J. 213 (C.A.A.F. 2024).

what she had previously seen on the video; she testified that the video showed the appellant "move his fingers in and out." Mr. ▉ also testified about what he saw on the video.

## LAW AND DISCUSSION

### A. Whether the Military Judge Abused his Discretion by not Dismissing, Abating, or Granting Other Relief[3]

We review a military judge's ruling for abuse of discretion on both a request for discovery and on a motion to dismiss. *United States v. Stellato,* 74 M.J. 473, 480 (C.A.A.F. 2015); *United States v. Shelby,* 85 M.J. 292, 294 (C.A.A.F. 2025) (citation omitted). Abuse of discretion occurs when the military judge (1) bases a ruling on findings of fact not supported by the record, (2) uses incorrect legal principles, or (3) applies correct legal principles in a clearly unreasonable manner. *United States v. Wilson,* 84 M.J. 383, 390 (C.A.A.F. 2024) (citation omitted).

### 1. Additional Facts[4]

Mr. ▉'s description of the video differed between his CID interview and an interview with the trial defense team, which was reflected in a memorandum for record (MFR) signed by a defense paralegal. Notably, Mr. ▉ told the trial defense team that the recorded video included an audio component, though the only specific thing he heard was the appellant calling out to ▉ Per the MFR, ▉ also told Mr. ▉ that, when she woke up with the appellant on top of her, he said something to the effect of "I thought this was what you wanted," but Mr. ▉ did not hear this statement when he reviewed the video.

The Wyze videos were stored on a cloud server. While ▉ could view the videos on her phone, she never downloaded them onto her device. About 10 days after the sexual assault, ▉ met with CID for the first of two interviews, during which CID asked her to save the video footage and bring it back with her, to which she agreed. Also during this first interview, she provided the still photographs

---

[3] The appellant's first two assignments of error refer to a "motion to dismiss or grant other appropriate relief" and a "motion to abate," respectively, but the defense motion at trial was solely a motion to dismiss. The government suggests we should find that appellant affirmatively waived any other form of relief, including abatement. Assuming that appellant did not waive other forms of relief, because we find no error, we would reach the same result under a preserved error or plain error analysis.

[4] We find in the record adequate support for, and therefore adopt, the military judge's findings of fact in his ruling on the defense motion to dismiss.

which showed her and the appellant in her living room (though none depicting the charged events) and a log of motion events that triggered the camera recording. A little more than a week later, ███████ met with CID again and told them that she did not have access to the videos, but allowed CID to forensically extract the screenshots from her phone.

CID submitted a preservation request to Wyze 11 days after the sexual assault for the recordings captured by the living room camera. Wyze confirmed receipt of the request and agreed to preserve the data for 90 days. Ninety-three days after submitting the initial preservation request, CID sought to renew it. Thirteen days after the renewed request, CID submitted a warrant to Wyze. The warrant return confirmed a "Kitchen cam" associated with █████'s account but there was no video media from her account responsive to the warrant. By the time of the Article 39(a) session on the defense motion, ███████ no longer had the phone she had used to view the videos or save the screenshots. In short, by the time of trial, the video recording was either destroyed or lost.

*2. Law and Analysis*

Article 46, UCMJ, gives both parties and the court-martial "equal opportunity to obtain witnesses and other evidence." 10 U.S.C. § 846. This creates an implicit requirement for the Government "to use good faith and due diligence to preserve and protect evidence and make it available to an accused." *United States v. Kern*, 22 M.J. 49, 51 (C.M.A. 1986). The Government violates the accused's constitutional right to due process when it fails to preserve evidence that "both possess[es] an exculpatory value that was apparent before the evidence was destroyed, and also [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 51 (quoting *California v. Trombetta*, 467 U.S. 479 (1984)).

Article 46 does not impose any greater requirement than *Trombetta* to preserve evidence that is "not apparently exculpatory." *Kern*, 22 M.J. at 51. (internal quotations omitted). However, R.C.M. 703(e)(2) provides a greater degree of protection. *See United States v. Simmermacher*, 74 M.J. 196, 201 (C.A.A.F. 2015) (noting that the R.C.M. provides an additional protection beyond the constitutional due process standards explained in *Trombetta* and *Kern*).[5] If a continuance or other relief cannot produce the missing evidence, R.C.M. 703(e)(2) provides a single-sanction relief of abatement when (1) the lost or destroyed evidence is of such central importance that it is essential to a fair trial *and* (2) there is no adequate substitute for the lost or destroyed evidence. *Id.* This rule does not require a showing of bad faith under these circumstances.

---

[5] At the time of *Simmermacher*, the applicable rule was designated R.C.M. 703(f)(2).

4

Applying these principles, the military judge concluded that the lost video evidence was "not possibly or potentially exculpatory, both when the video was lost or at the present time." In so doing, the military judge noted the appellant's multiple admissions and confession—both to ███ and CID, confirming his commission of the offense—and Mr. ██'s independent review of the video which led him to conclude that appellant had sexually assaulted ███ The military judge also noted that all evidence of record indicated the video showed appellant committing a crime, which would make the evidence inculpatory rather than exculpatory.

Both at trial and again on appeal, the defense points to the statement, attributed to the appellant and relayed via the MFR of Mr. ██'s defense interview, to the effect of "I thought this was what you wanted" as evidence of a potential mistake of fact, which in the view of the defense should have cued the government to the potentially exculpatory nature of the video. The military judge specifically found that the video did *not* capture this statement; it was relayed in a verbal conversation between ███ and Mr. ██ and was not something Mr. ██ heard when he reviewed the video.[6] The military judge concluded, "this alleged comment [of the appellant] was not known to CID at the time the video was lost, likely came directly from [███ rather than through Mr. ██'s abbreviated video review, and testimony regarding this comment is presently available to the Defense as they obtained it through their own pretrial interview." The military judge's two essential conclusions are both supported by the record and not clearly unreasonable: (1) that this comment was not on the video—and thus the video was not exculpatory nor, by implication, essential to a fair trial—and (2) that the evidence of the comment was not lost to the defense.

In sum, the military judge did not abuse his discretion when he denied the defense motion to dismiss or to grant any relief for the lost video recording.

### B. Whether the military judge abused her discretion by denying the defense request for an adverse inference instruction

R.C.M. 920(e)(1-6) requires a military judge to give certain instructions, principally the elements of each offense charged and any lesser included offenses, as well as special defenses under R.C.M. 916. We review *de novo* the question of whether the members are properly instructed on the law. *United States v. Hale,* 78 M.J. 268, 274 (C.A.A.F. 2019) (citations omitted). Apart from the required

---

[6] At the Article 39(a) session to present evidence and argument in support of this motion, the trial defense counsel acknowledged that Mr. ██ had never told the defense "anything noteworthy" about the audio portion of the recording, and neither party called him as a witness for the motion. At the Article 39(a) session, the defense did not ask ███ whether the appellant had made this statement to her or whether she had told Mr. ██ that he did.

instructions under R.C.M. 920(e), a military judge has substantial discretion in deciding instructions to give in response to requests of counsel. *United States v. Harrington,* 83 M.J. 408, 416 (C.A.A.F. 2023) (citation omitted); *see also* R.C.M. 920(e)(7). An abuse of this discretion occurs if "(1) the requested instruction was correct; (2) the [requested] instruction was not substantially covered by the main instruction; and (3) the instruction [is] on such a vital point in the case that the failure to give it deprived the accused of a defense or seriously impaired its presentation." *Harrington,* 83 M.J. at 416 (citation omitted).

### *1. Additional Facts*

The military judge who presided over pretrial hearings and ruled on the defense motion to dismiss footnoted his ruling:

> If the Defense requests, the Court may consider providing a Defense-provided panel instruction, similar to *United States v. Simmermacher,* to the effect of "Because Government failed to adequately preserve the Wyze Camera video via timely preservation requests, you may infer that the missing evidence would have been adverse to the prosecution. However, you are not required to draw this inference.

A different military judge presided over the trial. The defense, on cross-examination of the lead CID agent, elicited testimony about CID's repeated unsuccessful attempts to obtain the video, both from ▮▮▮▮ and directly from Wyze. On cross examination of ▮▮▮▮ and on direct examination of the lead CID agent, the defense further elicited testimony to imply that ▮▮▮▮ deliberately chose not to download or provide the video to CID, instead preserving and presenting only a cherry-picked selection of screenshots. After the close of evidence, when the military judge asked if either party requested additional instructions, the defense requested an adverse inference instruction.

The defense proposed instruction linked the lost video to the general credibility of witnesses instruction, and would have informed the members:

> You heard evidence that a Wyze video recorded acts by the alleged victim and SPC Max Predvil in the early hours of 1 May 2022. You also heard evidence that (a) CID made repeated requests to ▮▮▮▮ to provide the video, (b) CID attempted to get the video through Wyze directly, and (c) the Wyze video was never recovered . . . . If you find this evidence credible, you are permitted to infer that the missing Wyze video would have negatively affected the

credibility of ███████ that is, the missing evidence would have caused you to question whether the testimony of ███ ███ was truthful and worthy of belief. In addition to consideration [sic] all of the evidence in the case, you are also permitted to infer that the evidence that the Government failed to obtain would have been favorable to the accused and would have been unfavorable to the Government.

The military judge denied the defense request, referring back to the prior judge's ruling that the lost video evidence was not exculpatory.

*2. Law and Discussion*

As discussed above, when lost evidence is of such central importance that it is essential to a fair trial *and* there is no adequate substitute, R.C.M. 703(e)(2) constrains the discretion of the military judge: she must either grant a continuance or other appropriate relief to obtain the evidence or abate the proceedings if the evidence cannot be obtained. *Simmermacher*, 74 M.J. at 201. If either requirement is not met, but evidence is nonetheless lost, an adverse inference instruction is an appropriate curative measure. *See United States v. Ellis*, 57 M.J. 375, 380 (C.A.A.F. 2002). Whether to give any such instruction remains within the discretion of the military judge. *Harrington*, 83 M.J. at 416.

The military judge did not abuse her discretion in electing not to give the instruction. Her denial referred back to the prior judge's findings and conclusions that, as discussed *supra*, were likewise not an abuse of discretion. Furthermore, the proposed instruction was largely incorrect. Its primary thrust was that SPC KP was culpable for the loss of the video evidence, rather than CID. The discovery rules impose a qualified duty on the *government* to preserve evidence. This duty does not extend to private individuals. Normally, putative crime victims are not government actors and have no legal duty to preserve evidence for future prosecution. Next, the military judge issued a general credibility of witnesses instruction that the members could consider each witness's "intelligence, ability to observe and accurately remember, sincerity, [] conduct in court . . . and how each witness might be affected by the verdict."[7] Finally, the instruction was not on a vital point in the case and refusal to give it did not deprive the accused of a defense or seriously impair its presentation. The lost video, as found by the military judge, was more inculpatory than exculpatory; the absence of this instruction did not deprive or impair the defense in the presentation of their case.

---

[7] The military judge also gave "bad character for truthfulness" and "prior inconsistent statement" instructions specifically for ███████.

*C. Whether appellant's trial defense counsel were ineffective for failing to assert mistake of fact.*

We review allegations of ineffective assistance of counsel *de novo*. *United States v. Palik*, 84 M.J. 284, 288 (C.A.A.F. 2024). "To prevail on an ineffective assistance claim, the appellant bears the burden of proving that the performance of defense counsel was deficient and that the appellant was prejudiced by the error." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)).

If facts are uncontroverted, we may decide the legal issue without further proceedings. *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). The relevant facts here are uncontroverted. At no point during the trial did the defense attempt to elicit, either through ▇▇▇ or Mr. ▇, the appellant's purported statement to the effect of "I thought this was what you wanted." At the close of evidence, when discussing the instructions to give the members, the military judge asked, "Counsel, I did not see evidence raised regarding mistake of fact. Am I mistaken?" Both trial and defense counsel agreed that mistake of fact was not raised.

Appellant argues generally that his defense counsel were ineffective for failing to assert a mistake of fact defense. More particularly, appellant asserts four bases for his claim: (1) failing to confront ▇▇▇ about the appellant's "prior mistake of fact statement," (2) failing to request both military judges consider the mistake of fact as to consent defense, (3) failing to request the military judge address sanctions for discovery violations under R.C.M. 701(g)(3), and (4) failing to seek abatement or other relief raised by the loss of potential mistake of fact evidence under R.C.M. 703(e)(2).

"With respect to *Strickland's* first prong, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Leipart*, 85 M.J. 35, 40 (C.A.A.F. 2023) (citations and quotations omitted). This presumption can be rebutted by showing "specific errors that were unreasonable under prevailing professional norms." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citations omitted). This requires showing that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

The sole source of the statement "I thought this was what you wanted," is a note from a defense paralegal describing an interview of Mr. ▇ in which he relayed a statement ▇▇▇ told him the appellant had said. In choosing not to seek to elicit this triple hearsay statement of belief, which had no independent corroboration or verification, trial defense counsel did not fall below "prevailing professional norms." *McConnell*, 55 M.J. at 482. And without that statement, there was no

evidence of record to support a mistake of fact instruction. Instead, the defense strategy centered around ███████'s motives and credibility,[8] as well as expert testimony to call into question *both* participants' memories of the event, suggesting that appellant's confessions were the product of confusion or coercion. Given our "highly deferential" scrutiny of counsel's performance, *Strickland,* 466 U.S. at 689, this strategy fell well within the "wide range of reasonable professional assistance."

Even were we to find deficient performance, we find no prejudice. This prong of the *Strickland* test requires the appellant to "demonstrate a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different." *United States v. Captain,* 75 M.J. 99, 103 (C.A.A.F. 2016) (citations, internal quotation marks, and alterations omitted). Even if the hearsay statement, "I thought this was what you wanted" had been admissible and prompted a mistake of fact instruction, the defense would still have to overcome appellant's three admissions—directly to ███████ via text message, in his CID interview, and his handwritten apology letter. Appellant fails to demonstrate how his counsel could have overcome that hurdle.

We easily dispense with the final two ineffective assistance assertions. Trial defense counsel did request, in writing and at oral argument, the military judge consider the four remedies listed in R.C.M. 701(g)(3) and fashion a remedy that was "just under the circumstances," citing to *United States v. Stellato,* 74 M.J. 473 (C.A.A.F. 2015) and to *United States v. Vargas,* 83 M.J. 150 (C.A.A.F. 2023).[9] Further, the military judge explicitly determined that the lost video did not warrant any relief under R.C.M. 703(e)(2). The appellant's real dispute is not that his

---

[8] Appellant faults his trial defense counsel for not "illuminating repeated obfuscation by ███████ related to the video", but there was extensive (spanning 10 pages of the record) cross-examination focused on her acts and omissions related to not preserving or providing CID with the Wyze video recording that she viewed.

[9] Both at trial and on appeal, the appellant's counsel conflate R.C.M. 701 and 703. The remedies listed in R.C.M. 701(g)(3) are for failure to comply with "this rule," *i.e.* R.C.M. 701, which addresses discovery–evidence that is within a party's or military authorities' possession, custody, or control. R.C.M. 703, on the other hand, addresses production–the ability of the parties to obtain evidence that is not already within the government's possession, custody, or control. The military judge, finding that the video was not in the government's possession, grounded his ruling in R.C.M. 703, not 701.

counsel did not try, just that they were unsuccessful.[10] Defense counsel are not ineffective when they present in good faith a claim or contention but do not prevail.

On the record alone, we are able to determine that defense counsel were not ineffective.

## CONCLUSION

Upon consideration of the entire record, the findings and sentence are AFFIRMED.

Judge MORRIS and Judge JUETTEN concur.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court

---

[10] Appellant also faults his trial defense counsel for "failing to emphatically persuade multiple military judges that *bad faith* was no longer the law." This appears to be a reference to the standard under R.C.M. 703(e)(2), *discussed supra*. The military judge in his pretrial ruling concerning the lost video did not rest his conclusion on the government's lack of bad faith. Bad faith came up again mid-trial when the defense invoked the best evidence rule seeking to preclude ▮▮▮'s testimony describing what she saw on the video; the military judge at trial correctly noted that bad faith is a consideration under that rule. *See* Mil. R. Evid. 1004(a).