UNITED STATES, Appellee,

v.

Anthony ROMANO, First Lieutenant,
U.S. Air Force, Appellant.

No. 96–0117.
Crim. App. No. 30567.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 3, 1996.

Decided July 10, 1997.

---

For Appellant: *Major Ormond R. Fodrea* (argued); *Colonel Jay L. Cohen* (on brief); *Major Robin S. Wink.*

For Appellee: *Captain Deborah M. Carr* (argued); *Colonel Jeffery T. Infelise* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Colonel Theodore J. Fink.*

*Opinion of the Court*

CRAWFORD, Judge:

From January 5–15, 1993, a general court-martial composed of members tried appellant at Hill Air Force Base (AFB), Utah. Contrary to his pleas, appellant was convicted of conspiracy to obstruct justice, conduct unbecoming an officer (3 specifications), and wrongfully fraternizing with an enlisted woman, in violation of Articles 81, 133, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 933, and 934, respectively. The convening authority approved the sentence of dismissal, 3 months' confinement, and partial forfeitures. The Court of Criminal Appeals affirmed the findings and sentence. 43 MJ 523 (1995).

We granted review of the following issues:

I

WHETHER APPELLANT WAS PREJUDICED BY THE GOVERNMENT'S FAILURE TO PROVIDE DISCOVERY OF EXCULPATORY STATEMENTS MADE BY AN ALLEGED CO–CONSPIRATOR (A1C MUCCI) WHICH WERE SPECIFICALLY REQUESTED BEFORE APPELLANT'S TRIAL.

II

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANT'S COUNSEL THE RIGHT TO USE STATEMENTS MADE BY A1C MUCCI (AN IMMUNIZED CO–CONSPIRATOR) TO HER ATTORNEY WHERE THE STATEMENTS WERE DISCLOSED BY HER IN TESTIMONY AT AN ARTICLE 32 HEARING.

III

WHETHER THE EVIDENCE IS NOT LEGALLY SUFFICIENT TO SUSTAIN THE FINDINGS OF GUILTY TO CONSPIRACY UNDER CHARGE I AND ITS SPECIFICATION.

IV

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR IN DENYING APPELLANT'S MOTION TO COMPEL DISCOVERY BY IMPROPERLY RELYING ON THE ATTORNEY WORK–PRODUCT EXCEPTION.

V

WHETHER UNLAWFUL COMMAND INFLUENCE SO PERMEATED APPELLANT'S PROSECUTION THAT THE FINDINGS AND SENTENCE SHOULD BE SET ASIDE.

We hold that the Government committed prejudicial error in failing to release the exculpatory statements made by Airman First Class (A1C) Tina M. Mucci. In addition, in order to avoid piecemeal litigation, we also address the rulings by the military judge which excluded A1C Mucci's statements because they were privileged (Issue II), as well as that which invoked the attorney work-product exception (Issue IV). We do not address Issue V because the record is undeveloped as a result of the military judge's erroneous rulings.

## FACTS

On October 15, 1991, appellant arrived at Hill AFB with his 5–year–old son. His wife and infant son remained in Colorado Springs, Colorado, because of the infant's medical problems. The offenses in this case grew out of allegations that appellant dated an enlisted female airman in his squadron. The initial inquiry into fraternization stemmed primarily from the allegation that A1C Mucci, a 19–year–old servicemember, attended several off-base events with appellant.

A1C Mucci received orders for Germany in April 1992. However, before she departed, she was informed by the Squadron First Sergeant, Larry R. Brubaker, that she was being placed on administrative hold because of allegations of fraternization with appellant. At that time, she told him about three "dates" with appellant. Thereafter, seeking advice, she immediately went back to her duty section and shared this information with A1C Tana D. Chevalier and her supervisor, Technical Sergeant (TSgt) Delcine Mitchell. Both Mucci and Chevalier acknowledge that Mitchell's comments may have been misinterpreted. It was a combination of the allegations of fraternization and the potential cover-up that led to the charges against appellant, Mucci, and Mitchell.

On December 9, 1992, at Mitchell's investigation under Article 32, UCMJ, 10 USC § 832, Major Northup, stationed with the Civil Law Division in the Office of the Judge Advocate General of the Air Force, Washington, D.C., testified by telephone that he had received a telephone call from Mucci seeking legal advice. According to Major Northup, A1C Mucci denied any improper relationship with appellant but was concerned about being continually called into the legal office to change her story. Because Major Northup could not represent her, she wanted to know how she could ask for an individual defense counsel.

Major Northup also testified that Sergeant Mitchell told him that "she never knew that Lieutenant Romano dated Airman Mucci...." Major Northup testified that Sergeant Mitchell told him that A1C Mucci had been promised that if she turned state's evidence, her assignment to Germany would not be canceled. He was also surprised that appellant would be court-martialed if there was only an allegation of dating.

Master Sergeant Paul S. Uloth also testified at Mitchell's Article 32. He stated that, at an unspecified time in June 1992, A1C Mucci, while having lunch with Sergeant Mitchell and him, said that she had lied to Sergeant Brubaker. Sergeant Uloth testified that he advised her to feel free to meet with Sergeant Brubaker but avoid the "barracks lawyers."

In a disclosure request, the defense requested that the Government produce "[a]ny known evidence tending to diminish credibility of witnesses...." They also requested "any impeachment evidence relating to such [prosecution] witnesses...." In a letter dated December 28, 1992, after Mitchell's Article 32, the assistant trial counsel responded that the Government was not aware of any evidence that the defense did not possess. Paragraph 14 of that letter, listing the information provided to the defense, does not disclose statements by Northup or Uloth. Thus, the testimony of Major Northup and Master Sergeant Uloth was not admitted at appellant's trial because the defense was unaware of the testimony. The defense alleges that these statements were crucial because Mucci's credibility was central to the case. Final Brief at 16.

The Government responds that Mucci's denial of involvement with appellant was not new because she made a sworn statement to that effect to Major Russell D. Miller, the individual investigating her administrative hold. She also admitted making earlier denials to defense counsel representing appellant and Mitchell. She admitted at trial that she had changed her story about five times. R. 503. As a result, the Government argues that the testimony from Northup and Uloth would have been cumulative with the other evidence. Answer to Final Brief at 5. In any event, the Government argues that the evidence could have been found with due diligence. *Id.* at 6.

The court below found that the prosecution "should have disclosed the Northup and

Uloth testimony to appellant, even without a request." 43 MJ at 527. However, the court also found the failure to disclose "harmless beyond a reasonable doubt." *Id.* at 528.

Under a grant of testimonial immunity, A1C Mucci testified at trial about dating appellant. Thereafter, appellant's defense counsel asked for a session under Article 39(a), UCMJ, 10 USC § 839(a). At that session, he made a proffer that if A1C Mucci was permitted to do so, she would testify on cross-examination that originally she told her attorney, Captain Blowers, that she had lied to Sergeant Brubaker, but that later, she told Captain Blowers that what she had told Sergeant Brubaker was the truth. Appellant's defense counsel argued that this testimony was admissible because A1C Mucci made these statements at Sergeant Mitchell's Article 32. He asserted that the "extremely crucial" nature of the evidence would overcome the social interest served by the attorney-client privilege.

The judge denied admission of the evidence. First, the military judge noted that certain statements made by Captain Blowers to Mitchell's defense counsel did not waive the privilege because the privilege belongs to the client. Additionally, he said that A1C Mucci had no choice but to testify under the grant of immunity. Thus, the military judge concluded that there was no voluntary waiver by A1C Mucci and her statements to her lawyer, Captain Blowers, could not be used to cross-examine her.

### DISCUSSION—Issue I

■ The genesis of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). In *Brady,* the Court noted that "[t]he principle of *Mooney v. Holohan* is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." *Brady, supra* at 87, 83 S.Ct. at 1196–97. However, *Brady* left open a number of questions which the Supreme Court sought to resolve in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). This Court has

also wrestled with *Brady* and its progeny. *See, e.g., United States v. Stone,* 40 MJ 420 (1994); *United States v. Hart,* 29 MJ 407 (1990).

Recently, in *Kyles v. Whitley,* 514 U.S. 419, 434–38, 115 S.Ct. 1555, 1566–67, 131 L.Ed.2d 490 (1995) (a 5–4 opinion), the Supreme Court, in amplifying on *Agurs* and *Bagley,* explained "materiality" as follows:

> [A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.... *Bagley*'s touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial...."

> The ... *Bagley* materiality [test] ... is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict. One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

> [W]e note that ... once a reviewing court applying *Bagley* has found constitutional error there is no need for further harmless-error review. Assuming arguendo that a harmless error inquiry were to apply, a *Bagley* error could not be treated as harmless, since "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different, ... necessarily entails the conclusion that the suppression must have had 'substantial and injurious effect or influence in determining the jury's verdict....' "

The ... *Bagley* materiality ... [test requires the] ... suppressed evidence [be] considered collectively, not item-by-item.

While the *Kyles* Court was closely divided, this division was only as to the "effect that the *Brady* materials would have had in chipping away at the edges of the State's case...." *Id.* at 475, 115 S.Ct. at 1585 (Scalia, J., dissenting). "While the definition of *Bagley* materiality ... [may leave] the government with a degree of discretion, it must also be understood as imposing a corresponding burden." *Id.* at 437, 115 S.Ct. at 1567. Thus, the prosecution takes a risk by not disclosing the unknown evidence. "This ... means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Id.; see also United States v. Simmons,* 38 MJ 376 (CMA 1993).

What started as an allegation of fraternization against A1C Mucci, a junior servicemember who sought advice hoping to preserve an overseas assignment, soon grew into an allegation of conspiracy among appellant and others to hamstring the investigation. The central issue in this case was the credibility of the witnesses. Most of the witnesses, including Master Sergeant Uloth, were from Hill AFB. Major Northup was not from Hill AFB, but was stationed in Washington, D.C. His testimony regarding his conversations with TSgt Mitchell and A1C Mucci was particularly critical to the defense. Early during the investigation, A1C Mucci, TSgt Mitchell, and A1C Chevalier perceived that the legal forces at Hill AFB were operating against them and appellant, and they sought the advice of an individual respected by TSgt Mitchell. Major Northup did not know appellant, did not know A1C Mucci, had not talked to her prior to the telephone conversation, and was professionally and geographically separated from the personnel at Hill AFB. Because the defense was denied this critical evidence, we cannot say that we have

"a verdict worthy of confidence." Certainly there was a "reasonable probability" of a different verdict had this evidence been made available. This probability was not speculative or remote. Thus, we cannot say with confidence that failure to reveal A1C Mucci's statements to Major Northup and Sergeant Uloth was harmless beyond a reasonable doubt. We answer Issue I in the affirmative.

### DISCUSSION—Issue II

▬ At common law, communications made in confidence with an attorney for the purposes of obtaining legal advice are privileged unless the privilege is waived by the client. 8 Wigmore, *Evidence* § 2292 at 554. (McNaughton rev. 1961). Statements intended to be communicated to third parties are not confidential. *United States v. Hubbard,* 16 F.3d 694, 697 n. 3 (6th Cir.1994), *rev'd in part,* 514 U.S. 695, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995); *In re Grand Jury Proceedings,* 727 F.2d 1352, 1356–1357 (4th Cir.1984). In an attempt to codify the common-law privileges, the Chief Justice of the United States transmitted to Congress the proposed Federal Rules of Evidence, which defined nine specific testimonial privileges, including the attorney-client privilege. Proposed Fed.R.Evid. 501–513; *Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 910–11, 63 L.Ed.2d 186 (1980). Congress rejected these rules in favor of one general rule on privileges: Fed.R.Evid. 501.

However, in 1980, the President promulgated a revised version of these proposed privilege rules for the military, Mil.R.Evid. 501–512, now in the Manual for Courts–Martial, United States (1995 ed.), including an attorney-client privilege, Mil.R.Evid. 502. The President determined that the benefits of the rules far outweighed the cost. Drafters' Analysis of Mil.R.Evid. 501, Manual, *supra* at A22–36.

Mil.R.Evid. 502 provides in part:

(a) *General rule of privilege.* A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client....

(b) *Definitions* . . . .

\*   \*   \*

(4) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

(c) *Who may claim the privilege.* The privilege may be claimed by the client. . . .

(d) *Exceptions.* There is no privilege under this rule under the following circumstances:

■ The military judge did not abuse his discretion in holding that A1C Mucci had validly invoked her attorney-client privilege. Her statements to her attorney, Captain Blowers, were made in confidence. There was no direct or circumstantial evidence that A1C Mucci intended her remarks to be communicated to a third party. While Mil. R.Evid. 502(d) sets forth exceptions to the attorney-client privilege and establishes a waiver rule for that privilege, compelled testimony resulting from a grant of testimonial immunity at an Article 32 is not a voluntary waiver. Mil.R.Evid. 510(b) provides:

[A]n accused who testifies in . . . her own behalf . . . under a grant or promise of immunity does not, merely by reason of testifying, waive a privilege to which . . . she may be entitled pertaining to the confidential matter or communication.

*See also* Mil.R.Evid. 510(a).

■ As has often been said, the purpose of a criminal trial is truthfinding within constitutional, codal, Manual, and ethical rules. *See United States v. Mezzanatto,* 513 U.S. 196, 203–05, 115 S.Ct. 797, 803, 130 L.Ed.2d 697 (1995). Because the privilege rules limit truthfinding by excluding legally relevant evidence, these rules are not "favored" by the federal courts. *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979); *see also In Re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir.1984); 4 *The Works of Jeremy Bentham* 288, 321 (Bowring ed. 1843) (recommending exclusion of all privileges relating to jurisdiction); 8

Wigmore, *Evidence* § 2192 at 70 (McNaughton rev.1961).

■ The military has a hierarchical scheme as to rights, duties, and obligations. The highest source of these is the Constitution, followed by the Uniform Code of Military Justice, the Manual for Courts–Martial, departmental regulations, service regulations, and the common law of Maryland (*see* S.Rep. No. 486, 81st Cong., 1st Sess. 32 (1949)). *United States v. Lopez,* 35 MJ 35, 39 (CMA 1992). While a lower source on the hierarchy may grant additional or greater rights than a higher source, those additional rights may not conflict with a higher source. The defense's constitutional right to produce evidence under the compulsory process clause may overcome the attorney-client privilege. *See, e.g., United States v. Rainone,* 32 F.3d 1203 (7th Cir.1994); *Jenkins v. Wainwright,* 763 F.2d 1390 (11th Cir.1985); *Valdez v. Winans,* 738 F.2d 1087 (10th Cir. 1984); *U.S. ex rel. Blackwell v. Franzen,* 688 F.2d 496 (7th Cir.1982); *United States v. Coven,* 662 F.2d 162, 170 (2d Cir.1981).

Because we do not know if there will be future proceedings and what might transpire at those proceedings, including whether A1C Mucci would be willing to testify without claiming privilege, it is impossible for us to do the necessary balancing to determine whether appellant would have a constitutional right to admit this evidence. Thus, it would be premature for us to make such a judgment in this case now. We leave that decision initially to the military judge if there is a rehearing.

### DISCUSSION—Issue IV

■ Since the seminal case on work-product privilege, *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), a civil case, the work-product rules have been applied to criminal cases. *See, e.g., Goldberg v. United States,* 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976) (application of the work-product privilege to the statement of witnesses); *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). The theory behind the work-product rule is that, after an attorney has spent time preparing the case, assembling and sorting the

facts, deriving a theory and theme for the case, and planning the strategy to be employed, the opponent, without some overriding interests, may not needlessly interfere with the thought processes used in creating the documents. *Nobles,* 422 U.S. at 238, 95 S.Ct. at 2169–70. As the Court in *Nobles* said: "At its core, the work-product doctrine shelters the mental processes of the attorney. . . ." *Id.* Whatever the outer boundaries of the rule, it certainly applies to memoranda which set forth the attorney's theory and theme of the case. *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975). Because of the broad disclosure rules in the military, many of the privilege issues presented to other courts have been answered. For example, RCM 701(a)(1)(A) and (C), Manual, *supra,* require that trial counsel reveal witness statements. In any event, it is questionable whether witness statements reveal the attorney's thought processes in such detail as to require protection. Foremost, open discovery avoids unnecessary trials and enables an accused to make informed decisions as to his or her options. Absent a disclosure requirement, documents specifically compiled and prepared with a reasonable anticipation of trial will be encompassed within the privilege if they encapsulate the attorney's thought processes.

If a rehearing is ordered, we would expect the military judge to examine *in camera* any documents for which the work-product privilege is claimed. The military judge should determine which documents fall under the work-product privilege in accordance with the principles discussed above. Any documents not released should be sealed. The military judge may issue appropriate protective orders for any documents ordered released to trial defense counsel. *See* RCM 701(g)(2). If appellate defense counsel request disclosure, the Court of Criminal Appeals shall examine the undisclosed documents *in camera* and determine if disclosure of any additional documents to appellate defense counsel is required and whether any additional protective orders are required. Any documents not ordered released by the Court of Criminal Appeals shall remain sealed for *in camera* examination by this Court if further review is granted. *See United States v. Branoff,* 38 MJ 98 (1993).

The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings of guilty and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge COX and Judges GIERKE and EFFRON, concur.

SULLIVAN, Judge, concurring:

It was fairness that prompted my vote to grant this case and fairness that leads me to concur with the reversal. Every accused in the military is entitled to and should get a fair trial. That is what this case means.