****CORRECTED COPY – DESTROY ALL OTHERS****

# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

---

### UNITED STATES

#### v.

### Chief Master Sergeant ROY A. BOWSER
### United States Air Force

### Misc. Dkt. No. 2014-08

### 03 October 2014

### \_\_\_\_ M.J. \_\_\_\_

GCM convened at Royal Air Force Lakenheath, United Kingdom.  Military Judge:  Mark L. Allred (arraignment) and Christopher F. Leavey.

Appellate Counsel for the Appellee:  Captain Lauren A. Shure (argued).

Appellate Counsel for the United States:  Captain Thomas J. Alford (argued); Colonel Don M. Christensen; Lieutenant Colonel Katherine E. Oler; and Gerald R. Bruce, Esquire.

Before

HECKER, WEBER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final publication.

WEBER, Judge:

The Government filed an interlocutory appeal under Article 62, UCMJ, 10 U.S.C. § 862, in this matter.  The Government challenges the military judge's ruling to dismiss all charges and specifications with prejudice following the Government's refusal to comply with the military judge's order to produce trial counsel's witness interview notes for an *in camera* inspection.

*Background*[1]

The appellee was charged with three specifications of rape, one specification of forcible sodomy, and one specification of assault consummated by a battery, in violation of Articles 120, 125, and 128, UCMJ, 10 U.S.C. §§ 920, 925, 928. All the charges and specifications concern the appellee's alleged conduct toward his then-wife, Senior Master Sergeant (SMSgt) AB. One charged rape allegedly took place in April 1994, while the other two allegedly occurred in close proximity in August 2008. The charged forcible sodomy and assault also allegedly occurred in August 2008. The appellee's court-martial was set for 2 June 2014 at RAF Lakenheath, United Kingdom, with motions practice beginning on 29 May 2014.

The Government's case revolved around SMSgt AB's testimony. The Government also intended to introduce statements the appellee made to his wife during a pretext phone call. However, on 30 May 2014, the military judge granted a defense motion to suppress the entirety of the pretext phone call, ruling that the appellee's statements in the phone call were not "admissions" and were thus not admissible as non-hearsay under Mil. R. Evid. 801(d)(2)(A). Upon a Government request for reconsideration, the military judge on 2 June 2014 again suppressed the evidence, this time also finding that its prejudicial effect substantially outweighed any probative value it possessed. *See* Mil. R. Evid. 403.

The appellee's civilian defense counsel then expressed an intention to change the forum selection from officer and enlisted members to military judge alone and stated the defense would withdraw its objection to admission of the pretext phone call statements. Trial counsel then moved for the military judge's recusal, expressing concern that the military judge could not fairly consider the statements in the pretext phone call now that they were apparently going to be introduced into evidence with the military judge now sitting as the fact-finder. The military judge denied the recusal motion, and the appellee pleaded not guilty and requested trial by military judge.

A series of contentious motions and discourses on the record followed. Trial defense counsel moved for disqualification of the lead trial counsel and for *in camera* review of trial counsel's trial preparation materials. This motion took place after trial defense counsel submitted a voluminous amount of defense character statements shortly before trial. Seeing that several of the character statements referred to the appellee's character for respect toward family, and given the lack of time available, trial counsel e-mailed the character letters' authors, *en masse*, a link to the audio file of the pretext phone call recording. Trial counsel's e-mail asked the recipients to review the audio file

---

[1] This background section is provided for context leading up to the military judge's ruling at issue. We make no specific findings of fact in this section to support our holding, as we lack fact-finding authority in this interlocutory appeal. The matters in this section are drawn from unambiguous factual matters with which the parties do not appear to disagree, as well the military judge's findings of fact at trial that are fairly supported by the record.

and then inform trial counsel if this material impacted their opinions of the appellee or their desire to maintain their character letters. Defense counsel complained both about trial counsel's action of sending the e-mail without providing proper context and for not immediately disclosing recipients' responses that the information did not change their opinion or affect their desire to submit character letters. (Trial counsel later provided these responses upon request by defense counsel.) At this same time, trial defense counsel also complained that it received untimely notice late on 1 June 2014 of prior statements or actions by the appellee under Mil. R. Evid. 304(d) and 404(b).

The military judge found trial counsel failed to provide timely Mil. R. Evid. 304(d) and 404(b) notice and suppressed these statements trial counsel wished to introduce. The military judge expressed some concern about trial counsel's actions in e-mailing the authors of the character letters but found no error in trial counsel's actions. However, he did find trial counsel should have promptly disclosed the recipients' responses that the information provided did not change their opinion or affect their desire to submit character letters, pursuant to Rule for Courts-Martial (R.C.M.) 701, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).[2] The military judge denied a defense request for an *in camera* review of the trial counsel team's notes to ensure they contained no *Brady* material that had not yet been disclosed, and, during the early afternoon of 2 June 2014, he granted the Government a continuance until 0800 on 4 June 2014 (approximately one and one-half days) to interview the authors of the character letters. As he ordered the continuance, the military judge also ordered trial counsel as follows:

> [W]hile I will not go ahead and take the draconian measure that the defense has requested with regard to an *in camera* review of all of trial counsel's materials, I am ordering the trial counsel to review one last time all records, including your notes, within your control or the control of related agencies. . . . I am ordering that you go over them one more time. This obviously includes not just your own notes but the notes of paralegals and others in there, and that you disclose anything that is possibly [R.C.M.] 701 and *Brady* material.
>
> I would ask that you go ahead – well, I will order that you go ahead and release it before the end of the day, or if such material is created in the next day or two immediately upon receipt in the future.

---

[2] For ease of reference, we refer to material required to be disclosed under these authorities simply as "*Brady* material."

> Please recognize that obviously trial counsel and I, it's also true that defense counsel and I, have at times disagreed with what the law is and disagreed with the rules. I suggest you don't want to be on the wrong side of my opinion on whether or not it is *Brady* material in the future. If during the trial, or if the accused is convicted and I have not yet authenticated the record, I discovered that the government had any colorable *Brady* material that was not disclosed, I will absolutely revisit my opinion on prosecutorial misconduct, and certainly the remedy.

At approximately noon on 3 June 2014, trial counsel provided notice of additional potential *Brady* material from four sources, pursuant to the military judge's order. The two additional disclosures most at issue in this appeal concern two senior noncommissioned officers who had spoken with SMSgt AB about one of the charged rapes. Both individuals independently came to the conclusion after their discussions with SMSgt AB that the appellee had tied SMSgt AB down during the incident or had restrained her in some way. According to trial counsel's disclosure, both individuals could not recall any specific words SMSgt AB used and left open the possibility that they just came away with the "impression" that the appellee had tied up SMSgt AB or restrained her. SMSgt AB's previous statements in this case contained no indication the appellee had tied her up or physically restrained her during either of the charged rapes. Trial counsel's disclosure did not expressly concede that these items were *Brady* material that was required to be disclosed. Rather, the disclosures were prefaced with the statement that the materials were provided "[i]n an abundance of caution." Later, trial counsel stated that he provided this information because "they are the only matters in all of our notes/files that could possibly even come close to a discoverable matter" and that trial counsel was "erring on the side of over disclosure."

Defense counsel responded to these disclosures by asserting that this material was clearly covered by *Brady* and related authorities because they revealed possible prior inconsistent statements from SMSgt AB, whose credibility was to be a central issue in the trial. Trial defense counsel asserted that he had lost confidence in the discovery process as a result of the late disclosure of this information as well as trial counsel's expression that the material was only provided out of an abundance of caution.

The military judge responded via e-mail during the continuance with questions about when the Government learned of this information. Not satisfied with the Government's response (which indicated the witnesses had been interviewed on 3 March and 28 May 2014), the military judge instructed trial counsel to have a paralegal prepared to testify as to the interviews she attended of the two senior noncommissioned officers. The military judge also instructed trial counsel to gather and make copies of all trial counsel or paralegal witness interview notes. Although the Government initially offered

to provide its notes for an *in camera* review (which the military judge had not yet suggested but agreed to do), the Government later changed its position, responding that it would not disclose its notes "on the advice of our supervisors and JAJG."[3] Trial counsel asserted that its notes were privileged under Mil. R. Evid. 502, which covers attorney–client communications.

When trial resumed at 0805 on 4 June 2014, the parties discussed this matter with the military judge before the military judge directed that the paralegal testify about the two senior noncommissioned officers' statements during their interviews. The paralegal testified that the individuals' statements were substantially as trial counsel had represented them to be: essentially, both individuals recalled SMSgt AB had been tied down during one of the charged rapes, but there was some ambiguity about the extent of their recollections or where their beliefs came from. The Government objected to some questions of the paralegal, asserting they were covered by the attorney work-product privilege. The military judge generally allowed the paralegal to testify as to the two senior noncommissioned officers' recollections.

Following the paralegal's testimony, the military judge expressed concern that trial counsel did not recognize the need to provide this material sooner and that even after providing it, trial counsel expressed doubt whether the material was required to be provided. The military judge summarized his view as follows: "There is no question, no question I can't imagine in anyone's mind, but certainly not in this court's mind, that that is *Brady* material; that is classic first year prelaw *Brady* material." The military judge raised the possibility of conducting an *in camera* review of trial counsel's witness interview notes to restore confidence in the discovery process. Trial counsel responded that it had attempted to comply with the military judge's previous order to turn over any material that was even arguably required by *Brady*, and therefore no further action was necessary. The military judge responded by noting that his order was merely a recitation of what trial counsel's obligations already were but that he recognized that trial counsel followed his order. Nonetheless, the military judge maintained concern that trial counsel did not recognize the materiality of this evidence. He concluded that trial counsel's actions caused him to wonder "what else potentially is out there that [trial counsel] would think is a close call."

The military judge then ordered the Government to provide its witness interview notes for an *in camera* review. He noted that if he found additional *Brady* material in those notes, he intended to release this information to the defense. He then informed trial counsel that if it did not comply with the order, he would either dismiss the charges and specifications with prejudice or abate the proceedings. Alternatively, if the Government complied with the order, the military judge would perform the *in camera* review, provide any required material to the defense, and the court-martial would proceed. The military

---

[3] AFLOA/JAJG is the office symbol for the Air Force Government Trial and Appellate Counsel Division.

judge asked for trial counsel's election, stating he was not inclined to give the Government any significant continuance to consult with JAJG or other supervisors. Trial counsel responded that the Government was "asserting [its] privilege" and asked for a continuance "in order to pursue [its] appellate options." Trial counsel stated, "We need a continuance in order to pursue a petition for extraordinary relief . . . . [W]e have to pursue appellate relief to see whether or not we have to comply with the order, and I guess whether or not to decide if the case should be abated or dismissed." The military judge responded as follows:

> Here's a ruling on your continuance; you're not getting a continuance for that. You have the material available; and I will state, and obviously counsel you're entitled to look at the law as well, but it seems clear that this [*in camera* review] is what CAAF has anticipated in cases such as this. And so I think the in camera review is entirely appropriate.

The military judge then recessed the court for "at least a half an hour" to "try to gather our thoughts together."

When the court reconvened at 1030 after an hour-long recess, trial counsel reasserted the privileged nature of the Government's interview notes, and again, requested a continuance "to seek appellate options for the military judge's order and for not complying with that order." Defense counsel responded that a continuance or abatement was inappropriate because the Government provided no support for its position that it was not required to turn over the notes and because the appellee desired to proceed to trial as quickly as possible. Trial defense counsel also expressed concern that the Government needed a continuance to complete its trial preparations, and therefore it would be unfair to reward the Government with a continuance on this issue.

The military judge again found that the statements by the two senior noncommissioned officers were clear *Brady* material, that trial counsel was wrong to assert that the material was anything other than clear *Brady* material, and that an *in camera* review was the appropriate mechanism for determining whether any remaining *Brady* material had not been provided. Again finding he had "no confidence that the prosecution has complied with its discovery requirements, and the government is now prohibiting this court from ensuring a fair trial," the military judge addressed the issue of an appropriate remedy. He found that the Government was still attempting to perfect its case on the eve of trial, that it was difficult to see how the interview notes could involve counsel's deliberative process, and that there was no reason why an *in camera* review should not be conducted. The military judge noted dismissal with prejudice is "a nuclear option" and "not one that [he] take[s] lightly" but that "the simple fact is the government has been seeking a delay, and that delay will work to the detriment of the accused." The military judge also found trial counsel committed prosecutorial misconduct by refusing to

obey the military judge's order for the *in camera* review, and he dismissed the charges and specifications with prejudice.

The military judge later issued a written ruling on this matter.[4] His written ruling generally summarized the factual background of this issue and explored his rationale for his ruling in greater detail. In particular, he provided more analysis as to why dismissal with prejudice was the appropriate remedy instead of abatement or dismissal without prejudice. In part, he found that "the government was still perfecting its case, that the failure to perfect [its] case in the previous 10 months was without good cause, and that any delay would inure to its benefit." Therefore, an abatement was not appropriate because it would "reward the party with unclean hands with that which it desperately needs."

The Government timely appealed the military judge's ruling to dismiss the charges and specifications with prejudice.

*Jurisdiction*

Military appellate courts are courts of limited jurisdiction; prosecution appeals are not favored and are available only upon specific statutory authorization. *United States v. Wuterich*, 67 M.J. 63, 70 (C.A.A.F. 2008) (citations omitted). This court has jurisdiction to hear this appeal under Article 62(a)(1)(A), UCMJ, which authorizes the Government to appeal "[a]n order or ruling . . . which terminates the proceedings with respect to a charge or specification" in a court-martial where a punitive discharge may be adjudged.

*Standard of Review*

We review a military judge's ruling to dismiss charges and specifications for an abuse of discretion. *See United States v. Douglas*, 68 M.J. 349, 354 (C.A.A.F. 2010) (employing abuse of discretion standard for decision not to dismiss after finding unlawful command influence); *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (reviewing decision to dismiss charges with prejudice for unlawful command influence under abuse of discretion standard). "'Abuse of discretion' is a term of art applied to appellate review of the discretionary judgments of a trial court. An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citing *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007)).

---

[4] The military judge had not indicated on the record that he intended to follow up with a written ruling. The military judge is not required to so indicate and may supplement or reconsider his ruling prior to authentication, *see* Rule for Courts-Martial 905(f), but in the case of a ruling to be appealed by the Government, it would be preferable to indicate whether the parties should expect a later written ruling.

Two types of trial-level actions by military judges receive particularly significant deference. First, a military judge enjoys "broad discretion" under the abuse of discretion standard in selecting an appropriate remedy to correct a wrong. *Douglas*, 68 M.J. at 354. In this situation, where the military judge has several possible remedies from which to choose, the abuse of discretion standard of review "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *Gore*, 60 M.J. at 187 (citing *United Sates v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)). The abuse of discretion standard recognizes that "when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993) (citations omitted). Therefore, even though dismissing charges with prejudice is a "drastic remedy" requiring military judges to "look to see whether alternative remedies are available," *Gore*, 60 M.J. at 187, the military judge's decision will be upheld so long as it was "within the range of remedies available and not otherwise a clear error of judgment." *Id.* at 189.

Second, the abuse of discretion standard grants trial judges wide latitude for matters concerning control of the courtroom and docket and rulings on continuances. *See United States v. Wellington*, 58 M.J. 420, 425 (C.A.A.F. 2003) (quoting *Morris v. Slappy*, 461 U.S. 1, 11 (1983)) (recognizing that military judges enjoy "broad discretion" on matters of continuance). We will not overturn a military judge's decision to deny a continuance unless "'reasons or rulings of the' military judge are 'clearly untenable and . . . deprive a party of a substantial right such as to amount to a denial of justice.'" *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987) (ellipsis in original) (quoting *Guggenmos v. Guggenmos*, 359 N.W. 2d 87, 90 (Neb. 1984) (citing *Pettegrew v. Pettegrew*, 260 N.W. 287 (Neb. 1935)).

In contrast to our powers of review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), this court "may act only with respect to matters of law" in an Article 62, UCMJ, appeal. Article 62(b), UCMJ; R.C.M. 908(c)(2). We cannot find our own facts in addition to, or contrary to, the facts found by the military judge, nor can we substitute our interpretation of his facts. *United States v. Baker*, 70 M.J. 283, 287–88 (C.A.A.F. 2011); *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007); *United States v. Terry*, 66 M.J. 514, 517 (A.F. Ct. Crim. App. 2008). "When a court is limited to reviewing matters of law, the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are fairly supported by the record." *Gore*, 60 M.J. at 185 (quoting *United States v. Burris*, 21 M.J. 140, 144 (C.M.A. 1985)) (internal quotation marks omitted).

This appeal involves several interrelated legal issues. We briefly overview the governing legal principles here.

***Disclosure of evidence:*** A prosecutor may not suppress evidence favorable to an accused upon request, as this violates notions of due process where "the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. When a witness's reliability "may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." *Giglio*, 405 U.S. at 154 (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)) (internal quotation marks omitted). Materiality in this context is demonstrated if the suppressed evidence "could . . . in any reasonable likelihood have affected the judgment of the jury." *Id.* (quoting *Napue*, 360 U.S. at 271). Therefore, the Government violates an accused's due process rights if it withholds evidence that is "exculpatory, substantive evidence or evidence capable of impeaching the government's case," or where "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Behenna*, 71 M.J. 228, 238 (C.A.A.F. 2012) (internal quotation marks omitted). "To be material, the evidence must have made the likelihood of a different result great enough to undermine confidence in the outcome of the trial." *Id.* (internal quotation marks, ellipsis, and brackets omitted). Military practice requires disclosure beyond constitutional requirements. R.C.M. 701(a)(6) requires trial counsel to "as soon as practicable, disclose to the defense the existence of evidence known to the trial counsel which reasonably tends to: (A) Negate the guilt of the accused of an offense charged; (B) Reduce the degree of guilt of the accused of an offense charged; or (C) Reduce the punishment."

***Prosecutorial misconduct:*** Prosecutorial misconduct occurs when trial counsel "'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (alteration in original) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). Prosecutorial misconduct is generally defined as "action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Hornback*, 73 M.J. 155, 160 (C.A.A.F. 2014) (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)). Prosecutorial misconduct does not automatically require a new trial or the dismissal of charges against an accused; instead, relief is granted only if trial counsel's misconduct "actually impacted on a substantial right of an accused (i.e., resulted in prejudice)." *United States v. Frey*, 73 M.J. 245, 249 (C.A.A.F. 2014) (quoting *Fletcher*, 62 M.J. at 178).

***Attorney work-product privilege:*** R.C.M. 701(f) references the attorney work-product privilege,[5] stating: "Nothing in this rule shall require the disclosure or production of notes, memoranda, or similar working papers prepared by counsel and counsel's assistants and representatives." As explained by our superior court:

> The theory behind the work-product rule is that, after an attorney has spent time preparing the case, assembling and sorting the facts, deriving a theory and theme for the case, and planning the strategy to be employed, the opponent, without some overriding interests, may not needlessly interfere with the thought processes used in creating the documents.

*United States v. Romano*, 46 M.J. 269, 274–75 (C.A.A.F. 1997) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)). Documents "specifically compiled and prepared with a reasonable anticipation of trial will be encompassed within the privilege if they encapsulate the attorney's thought processes." *Id.* at 275.

***In camera review:*** Where discovery obligations potentially impact a recognized privilege, an *in camera* review is generally the preferred method for resolving the competing compulsions. R.C.M. 703(f)(4)(C) states that where the holder of evidence requests relief from compliance with a subpoena or order of production, the military judge may direct that evidence be submitted for an *in camera* review to determine whether such relief should be granted. *In camera* proceedings are specifically provided for in other situations involving privileged material.[6] Both the Supreme Court and the Court of Appeals for the Armed Forces have approved of *in camera* review as a mechanism to resolve attorneys' claims of privilege in criminal discovery matters. *See United States v. Zolin*, 491 U.S. 554, 568 (holding that a complete prohibition against an opponent's use of *in camera* review to establish the applicability of the crime-fraud exception to the attorney-client privilege is "inconsistent with the policies underlying the

---

[5] This protection is often referred to as the attorney work-product "doctrine" instead of a "privilege." *See, e.g.*, *United States v. Nobles*, 422 U.S. 225, 237–38 & n.11 (1975) (explaining the "work-product doctrine" and distinguishing it from the "attorney-client privilege.") Our superior court has occasionally used the term "doctrine" as well. *See United States v. Dorman*, 58 M.J. 295, 298 n.1 (C.A.A.F. 2003) ("The attorney–client privilege, which includes the work product doctrine, is an evidentiary concept that may be invoked 'in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client.'") (quoting Model Rules of Prof'l Conduct R. 1.6 cmt. 3 (2003)). However, our superior court has more often used the term "work-product privilege," including in its most relevant decisions for purposes of this case. *United States v. Romano*, 46 M.J. 269, 274–75 (C.A.A.F. 1997); *United States v. Vanderwier*, 25 M.J. 263, 269 (C.M.A. 1987). We therefore use the latter term without determining whether there is a legally significant distinction between the two terms.

[6] *See* Mil. R. Evid. 505(i)(3) (providing for *in camera* review in situations involving classified information); Mil. R. Evid. 513(e)(3) (calling for *in camera* review where necessary to rule on a motion for production or admission of mental health records). Our superior court has ruled that even if a qualified newsgathering privilege exists in the military justice system, such a privilege would not preclude an *in camera* review of the purportedly privileged material, and under the facts of that case, the military judge was required to conduct such a review before ruling on a motion to quash a subpoena. *United States v. Wuterich*, 67 M.J. 63, 79 (C.A.A.F. 2008).

privilege"); *Romano*, 46 M.J. at 275 (holding that appellant was prejudiced by the Government's failure to provide discovery of exculpatory statements, and "[i]f a rehearing is ordered, we would expect the military judge to examine *in camera* any documents for which the work-product privilege is claimed").

**Remedy:** A dismissal is a drastic remedy and courts must look to see whether alternative remedies are available. *Gore*, 60 M.J. at 187. Dismissal is not appropriate where an error can be rendered harmless by an alternative remedy. *See United States v. Green*, 4 M.J. 203, 204 (C.M.A. 1978). Conversely, dismissal is appropriate when an accused would be prejudiced or no useful purpose would be served by continuing the proceedings. *Id.* (citing *United States v. Gray*, 47 C.M.R. 484, 486 (C.M.A. 1973)); *see also United States v. Dooley*, 61 M.J. 258, 264–65 (C.A.A.F. 2005) (holding the military judge did not abuse his discretion in dismissing charges with prejudice for violation of speedy trial court-martial rule, and recognizing that the military judge assessed the prejudice that would result from remedies short of dismissal).

**Continuances:** In the context of a direct appeal of a court-martial conviction, appellate courts determine whether a military judge abused his or her discretion in denying a continuance by reviewing factors such as surprise, the nature of any evidence involved, the timeliness of the request, substitute testimony or evidence, availability of witnesses or evidence requested, the length of the continuance, prejudice to the opponent, whether the moving party received prior continuances, good faith of the moving party, use of reasonable diligence by the moving party, the possible impact on the verdict, and prior notice. *United States v. Miller*, 47 M.J. 352, 357 (C.A.A.F. 1997) (citing F. Gilligan and F. Lederer, *Court-Martial Procedure* § 18-32.00 at 704 (1991)).

*Discussion*

At the outset, the parties disagree as to exactly what issue is before this court. The Government's framed issue is: "Whether the military judge abused his discretion by finding prosecutorial misconduct and dismissing all charges and specifications with prejudice." The Government contends that this issue encompasses not only the military judge's specific rulings concerning the Government's noncompliance with the order for *in camera* review but also his finding that trial counsel had failed to comply with and grasp *Brady* requirements. In contrast, the appellee contends that the only issues before us deal with trial counsel's decision to disobey the military judge's order to produce interview notes for an *in camera* review and the military judge's remedy for trial counsel's failure to comply with that order.

This court may only act upon prosecution appeals pursuant to specific statutory authorization. Article 62(a)(1)(A), UCMJ, authorizes the Government to appeal "[a]n order or ruling . . . which terminates the proceedings with respect to a charge or specification." The military judge's oral order at trial and his subsequent written ruling

dismissed charges because, in the military judge's view, the Government committed prosecutorial misconduct in failing to comply with the military judge's order to produce the interview notes for an *in camera* review. Dismissal was not ordered for the Government's earlier purported discovery obligation violations. Therefore, the narrow issue before this court concerns trial counsel's refusal to comply with the military judge's order and the military judge's remedy for this refusal, not the findings of *Brady* violations that led to this issue. However, the military judge's order to produce the interview notes flowed directly from his finding that trial counsel's actions led to a loss of confidence in the discovery process. Therefore, we will review the military judge's findings with regard to *Brady* obligations as part of the circumstances behind his ultimate ruling concerning the order for *in camera* review.

Thus framed, the Government's appealed issue leaves two questions we must answer to resolve this matter. First, did trial counsel have a valid basis to refuse to comply with the military judge's order to produce the interview notes for an *in camera* review? Second, did the military judge abuse his discretion in dismissing the charges and specifications with prejudice rather than electing some less drastic remedy?

1.  Did trial counsel have a valid basis to refuse to comply with the military judge's order to produce the interview notes for an *in camera* review?

We emphatically answer this question in the negative, holding that the military judge was within his authority to order the notes to be produced for an *in camera* review and the Government had no basis to refuse this order.

The Government disagreed at trial that it failed to comply with its discovery obligations, and it maintains that position on appeal. We express skepticism with the Government's position that the statements by the two senior noncommissioned officers are not *Brady* material. The Government's case rested almost entirely on the credibility of SMSgt AB; no physical evidence was present, and the appellee's statements in the pretext phone call provided no significant inculpatory information. Even if the two senior noncommissioned officers expressed some uncertainty about exactly what SMSgt AB told them, any indication that SMSgt AB may have made inconsistent statements directly about a charged rape could be reasonably likely to affect the judgment of the factfinder. *Cf. Romano*, 46 M.J. at 273 (finding the appellant was prejudiced by the Government's failure to provide discovery of exculpatory statements by an enlisted member with whom the appellant, an officer, was accused to have fraternized because "[t]he central issue in this case was the credibility of the witnesses"); *United States v. Brickey*, 16 M.J. 258, 268–69 (C.M.A. 1983) (holding trial counsel violated its duty to disclose information that impacted both the credibility and competence of a key prosecution witness to a drug trial). We do not know whether the statements by the two senior noncommissioned officers would have affected the findings on whether the prosecution had met its burden to prove the elements of the offenses beyond a reasonable

doubt, but there seems to be at least a reasonable likelihood that this information—which represented the only evidence of a prior inconsistent statement by the alleged victim—would have led to a different result.

We need not definitively state whether a discovery violation occurred. It matters not whether the military judge was correct or incorrect in his determination that this information was clearly *Brady* material and that trial counsel's late disclosure and qualifying language caused him to lose faith in the discovery process. Whether the military judge was right or wrong in this judgment call, trial counsel has an obligation to "comply promptly with all orders and directives of the court." AIR FORCE STANDARDS FOR CRIMINAL JUSTICE Standard 3-5.2(c) (6 June 2013). Trial counsel may have disagreed with the military judge's rationale for his order to disclose interview notes for an *in camera* review, but there was nothing illegal about the order, and the military judge had a reasonable basis for issuing it. Short of some completely unusual circumstances not present here, the Government simply does not have the authority to choose which orders of a military judge it will follow and which ones it will not, at least not without facing the threat of remedial action or even punishment.[7]

The Government's assertion of the attorney work-product privilege provides no justification for its refusal to comply with the military judge's order. Even assuming the interview notes contained privileged attorney work-product information,[8] the privilege is not absolute and does not shield the interview notes from *in camera* review. Indeed, *in camera* review of potentially privileged interview notes is "a sound practice that protects the rights of all concerned and aids in appellate review." *United States v. Vanderwier*, 25 M.J. 263, 269 (C.M.A. 1987). "[I]t is clear that *in camera* review does not destroy the privileged nature of the contested communications . . . ." *Zolin*, 491 U.S. at 569. If the attorney work-product privilege protected portions of the interview, that privilege was not harmed or abrogated by the military judge's order to review the materials *in camera*. Military judges routinely inspect potentially privileged material; any applicable privilege is not diminished merely because the military judge privately reviews the material.[9]

---

[7] A military judge may punish for contempt any person who "willfully disobeys the lawful writ, process, order, rule, decree, or command of the court-martial." Article 48(a)(3), UCMJ, 10 U.S.C. § 848(a)(3).

[8] "Interview notes prepared by a lawyer or his representative are not automatically excluded from discovery by the defense on the basis that the notes are work product." *Vanderwier*, 25 M.J. at 268. "[I]t is questionable whether witness statements reveal the attorney's thought processes in such detail as to require protection." *Romano*, 46 M.J. at 275. The leading Supreme Court case on the work-product doctrine rejected the idea that purely factual information contained in an attorney's witness interview notes is protected, because "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). However, the Court also recognized the mental impressions of an attorney are protected. *Id.* at 511–12.

[9] The Government cites *United States v. Zolin*, 491 U.S. 554, 565 (1989), for the proposition that "examination of the evidence, even by the judge alone, in chambers, might in some cases 'jeopardize the security which the privilege is meant to protect.'" (quoting *United States v. Reynolds*, 345 U.S. 1, 73 (1953)). We find that the concern discussed in *Zolin* (disclosing military secrets to a judge for *in camera* review) does not apply with the same force in this situation.

Any damage to the privilege would only occur if the military judge chose to order privileged information to be released to the defense. If the military judge had done this, and if the Government believed it suffered harm by the ordered release, the Government could have applied for relief at that point, perhaps through application for an emergency writ. If the Government was concerned that the military judge would release the information without providing the opportunity to seek appellate relief, it could make a specific request that the military judge not turn over notes to the defense until the Government had the opportunity to seek appellate relief on an emergency basis if those notes did include privileged materials. Here, however, the Government merely elected to disobey the military judge's order to produce the interview notes for *in camera* review; therefore, we do not know whether the military judge would have turned over any materials to the defense. The military judge's order for a mere *in camera* review resulted in no cognizable harm to the Government, and therefore any privilege the Government possessed in the interview notes does not justify trial counsel's refusal to comply with the military judge's order.

The Government has cited no valid reason to justify its refusal to follow the normal procedure in this case of complying with the order for *in camera* review. Rather, the Government should have dealt with any ordered release of privileged information when and if that became necessary. When pressed at oral argument, the Government articulated three reasons for its choice to protest this issue when *in camera* review was ordered rather than protesting at a point when the military judge would have ordered information to be released to the defense. First, the Government asserted that this court's decision in *United States v. Rettinghouse*, Misc. Dkt. No 2010-11 (A.F. Ct. Crim. App. 2010) (unpub. op.), indicated the Government might be considered to have waived its privilege if it complied with the order. Second, it argued that the only way the Government could appeal this issue under Article 62, UCMJ, rather than through a petition for extraordinary relief, was to disobey the military judge's order and then appeal the military judge's decision to abate the proceedings or dismiss the charges and specifications. Finally, the Government asserted that the military judge's decisions up to that point caused the Government to lose confidence that the military judge would treat the submitted material appropriately; for example, the Government feared the military judge might immediately release information to the defense without allowing the Government an opportunity to protest this action to our court.

None of these three reasons provides sufficient cause to refuse to comply with the military judge's order. *Rettinghouse* does not, as the Government argues, stand for the proposition that the Government must disobey the military judge's order or risk being deemed to have waived any complaint. In *Rettinghouse*, after conducting an *in camera* review of trial counsel's notes taken during interviews of the accused's stepdaughters (alleged victims of the accused's charged sexual acts) and determining that the notes revealed inconsistencies by the alleged victims that should be disclosed to the defense as

exculpatory material under *Brady*, the military judge compelled trial counsel to produce the notes to the defense. Trial counsel did not protest this order or seek appellate relief, instead providing the notes to the defense. After defense counsel's review of the notes and further proceedings resulted in a continuance of almost two weeks, trial counsel then stated she would not produce legal office personnel to testify about their interviews with the alleged victims. The military judge ordered trial counsel to do so, and when trial counsel refused to comply, the military judge abated the proceedings. Upon review under Article 62, UCMJ, we determined the only proper issue before the court was the abatement for refusal to produce the witnesses, not the military judge's earlier order to produce interview notes to the defense. We noted the passage of time since the order to produce the notes, and the fact that trial counsel complied without objection. Therefore, we held:

> If the government had refused to disclose the notes at issue based on work product and had the military judge then abated the proceedings . . . , the issue of whether the work product rule protected disclosure of the interview notes in this case may have been a proper subject of appeal under Article 62, UCMJ, since the abatement would have directly resulted from the military judge's ruling concerning the applicability of the work product doctrine to potentially exculpatory material.

*Rettinghouse*, unpub. op. at 5.

Nothing about *Rettinghouse* supports the Government's position that it had the right to disobey the order to produce witness interview notes for an *in camera* review. At best, this unpublished decision indicates the Government may need to disobey an order to produce notes *to the defense*, lest it be considered to have bypassed the opportunity for an interlocutory appeal. It does not stand for the proposition that the Government may refuse to provide notes to the military judge for an *in camera* review. In fact, the *Rettinghouse* court specifically reiterated our superior court's guidance in *Romano* that *in camera* review is an appropriate mechanism in this situation: "We note that the procedure adopted by the military judge for determining whether witness interview notes taken by members of the prosecution team should be disclosed is in accord with the procedure suggested by our superior court in [*Romano*]." *Id.* at 1. Nowhere does the *Rettinghouse* decision indicate that the Government may short-circuit the process approved of in *Romano* by refusing to submit notes for an *in camera* review.

The Government's remaining two rationales for refusing even an *in camera* review of its notes require little discussion to expose their lack of merit. The Government's desire to seek a more advantageous appeal mechanism is not a valid basis to refuse an order from a military judge. Even if it was, the Government could have asked the military judge to provide it the option of refusing to produce notes to the

defense after an *in camera* review. If the military judge ordered some portion of the notes to be provided to the defense, the Government's failure to do so would still presumably result in a remedy such as abatement or dismissal (providing the Government the opportunity for an Article 62, UCMJ, appeal), but at least its refusal to comply with a court order would be based on some articulable harm. The Government's last reason, that the military judge's previous rulings gave it no confidence the military judge would appropriately treat the material, is unsatisfactory. The mere fact that the Government disagreed with some of the military judge's rulings, particularly his ruling regarding the pretext phone call, does not mean the military judge could not be trusted to perform an *in camera* review, a common procedure in modern court-martial practice. If the Government had some specific concern—for example, if it was concerned that the military judge, sitting as factfinder, would see some material in the notes inappropriate for a factfinder to see—it could have articulated that on the record.[10] It made no effort to do so.

If trial counsel had a good-faith basis to refuse to comply with the military judge's order to produce the interview notes for an *in camera* review, he failed to articulate that basis on the record. The court's order was clear, lawful, and valid. Likewise, on appeal, the Government has failed to articulate any valid rationale for its noncompliance. In the absence of some unusual circumstances not present here, we refuse the Government's invitation to authorize counsel to disobey orders of a military judge.

2. <u>Did the military judge abuse his discretion in dismissing the charges and specifications with prejudice rather than electing some less drastic remedy?</u>

Trial counsel's refusal to follow the military judge's order warranted a remedy. The military judge had already determined that he needed to review the interview notes in order to ensure the appellee was provided a fair trial. When the Government refused to comply with his order, the military judge had only three legitimate options for a remedy: abate the proceedings until such time as the Government complied with his order, dismiss the charges and specifications without prejudice, or dismiss the charges and specifications with prejudice.

The military judge was obligated to consider each of these three options and elect one that most reasonably corrected the harm caused by the Government's actions. He did exactly this in his written ruling. His oral ruling from the bench contained less analysis as to his choice of remedy, but he did recognize that dismissal with prejudice "is a nuclear option" and "not one that [he] take[s] lightly." He elected to dismiss with prejudice based primarily on his finding that the Government had repeatedly sought a

---

[10] We note that military judges often are exposed to evidence that is ultimately ruled inadmissible. Military judges are trusted to compartmentalize portions of courts-martial and disregard inadmissible evidence to which they have been exposed.

delay to prepare for trial, and this delay would operate to the appellee's detriment. As such, the military judge found that abatement or dismissal without prejudice would therefore reward the Government for its noncompliance.

We consider the military judge's position as to the Government's desire for a delay, and the effect of that delay on the defense, to be findings of fact decisive in the military judge's choice of remedy. We acknowledge that the record contains some information inconsistent with these findings of fact. The only two continuances sought by the Government were: (1) a delay of less than two days to deal with about 250 pages of character letters recently submitted by the defense; and (2) a continuance of some number of hours to consult with JAJG when the military judge ordered trial counsel to produce the interview notes for *in camera* review. These continuances do not strike us as particularly unreasonable. Apart from these matters, the only indications in the record as to trial counsel's desire for a delay or lack of preparation involve late notices submitted under Mil. R. Evid. 304(d) and 404(b) and late witness notices. These late notices are certainly not to be commended, but they are also not unprecedented in our experience with court-martial preparation.

Despite these matters, this is an interlocutory appeal by the Government, and we lack independent fact-finding authority. Our obligation is not to substitute our interpretation of the facts for that of the military judge but to determine whether the military judge's findings are fairly supported by the record. They are. In addition to the requests for continuances and multiple late notices, we note, as did the military judge, that: (1) this was not a particularly complex case from an evidentiary standpoint that should normally warrant late notices; (2) the Government provided no valid reasons whatsoever for its refusal to comply with the military judge's order, leaving room for speculation about its motives; and (3) the defense seemed to take a particularly strident position in its desire to timely try this case. The record provides some support for the military judge's findings of fact, and we lack the authority to overturn them.

The Government also argues that a finding of trial counsel's bad faith was necessary to support the military judge's remedy of dismissal with prejudice and that the military judge found no bad faith until his later written ruling. The Government cites *United States v. Kern*, 22 M.J. 49 (C.M.A. 1986), in support of this position. In *Kern*, the court held that a military judge may fashion an appropriate remedy for destruction of evidence, including "even dismissal of charges or specifications where bad faith is clearly demonstrated." *Id.* at 52. We find *Kern* provides no basis to overturn the military judge's selected remedy. The military judge reasonably analyzed why alternative remedies would not adequately correct the harm caused by the prosecutorial misconduct. Assuming the bad faith requirement for dismissal following destruction of evidence also applies to *Brady* violations (a matter we need not decide), the military judge found trial counsel acted in bad faith. This finding may not have come until the later written ruling,

but it was not unreasonable given the utter lack of basis for trial counsel's refusal to obey the court order.

Finally, with the benefit of the appellate perspective and distance, we express disappointment that a brief continuance of some number of hours could not be granted to allow trial counsel to obtain additional guidance. Normally, a brief continuance is far preferable to dismissal with prejudice, which nullifies the interests of the Government, the alleged victim, and the public in litigating this matter. However, the military judge receives broad deference in matters of trial management and choice of remedy, and the combination of those two issues in this ruling places his deference well outside our authority to criticize. The military judge also analyzed several of the *Miller* factors for considering whether to grant a continuance in his oral and written rulings, even though he did not explicitly refer to the case. Finally, the Government's position on appeal makes our resolution of the choice of remedy simple. At oral argument, this court asked Government counsel whether it was now prepared to turn over the interview notes for *in camera* review by the military judge. Government counsel represented that the United States would not do so, absent an explicit order from this court (or our superior court) to do so. Two follow-on filings from the Government again indicate that the Government still believes it had the authority to disobey the military judge's order and will not comply with the order until all appellate options have been exhausted. In other words, even with the benefit of more than three months of consultation, reflection and research, the Government still believes it had no obligation to comply with a military judge's order for *in camera* review. Therefore, even if the military judge had granted a brief continuance for trial counsel to consult with JAJG, it is apparent that the Government still would not have produced the notes for *in camera* review. The military judge did not abuse his discretion in his choice of remedy.

*Conclusion*

On consideration of the appeal by the United States under Article 62, UCMJ, it is by the court on this 3rd day of October 2014,

**ORDERED:**

The appeal of the United States under Article 62, UCMJ, is hereby **DENIED**.

Senior Judge HECKER and Judge TELLER concur.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court